HAROLD GREENE, N. CARL MONROE, AND JERRY N. THOMAS, DOING BUSINESS UNDER THE NAME OF EQUITY ASSOCIATES, AND N. C. MONROE CONSTRUCTION COMPANY v. CITY OF WINSTON-SALEM

No. 15

(Filed 14 April 1975)

Municipal Corporations § 29— ordinance requiring sprinklers in high-rise buildings — preemption by State law

A municipal ordinance requiring sprinkler systems in high-rise buildings is a building regulation ordinance purporting to regulate a field in which the General Assembly has provided a complete and integrated regulatory scheme to the exclusion of local regulation and is invalid and unenforceable absent approval of the State Building Code Council pursuant to G.S. 143-138(b). G.S. 160A-174.

On *certiorari,* prior to determination by the Court of Appeals, pursuant to G.S. 7A-31, to review the judgment of *Exum, J.,* at the 26 August 1974 Session of FORSYTH Superior Court.

Plaintiff Equity Associates, a partnership, entered into a contract with Monroe Construction Company to construct an eight-story motor inn on property owned by Equity Associates on Akron Drive in the City of Winston-Salem.

On 18 December 1973, defendant's Board of Aldermen enacted an ordinance which, in part, provided:

AN ORDINANCE AMENDING THE FIRE PREVENTION CODE SO AS TO REQUIRE SPRINKLER SYSTEMS IN CERTAIN INSTANCES, ORDER 3238, ADOPTED DEC. 18, 1973

\*          \*          \*

Section 14.6. *When Sprinkler Systems Required.*

Except as otherwise provided herein, complete sprinkler systems shall be installed in all buildings erected from and after the effective date of this ordinance regardless of type of construction, exceeding five (5) stories or fifty (50) feet in height. The installation shall be in accordance with the National Fire Protection Pamphlet No. 13 (which is 1966 Edition incorporated herein by reference as fully as if set out verbatim herein), a copy of which Pamphlet shall be kept on file in the office of the Fire Prevention Bureau of the City. The term "buildings" as used in this section shall not be interpreted as including parking garages.

The plans and specifications for the building were prepared in accordance with the requirements of the North Carolina State Building Code (Building Code) and did not provide for the installation of a sprinkler system. Pursuant to § 103.2 of the Building Code, the plans and specifications were submitted to, and were approved by, the Engineering Division of the North Carolina Department of Insurance as being in compliance with the requirements of the Building Code.

Before adoption of the Ordinance on 18 December 1973, plaintiffs had made substantial expenditures and had incurred contractual obligations toward constructing the motor inn which totaled approximately $100,000.

On 7 February 1974 plaintiffs filed with defendant an application for a building permit for the proposed motor inn.

During the month of February, there were discussions concerning the sprinkler ordinance between the Building Inspection Supervisor for the City, two representatives of the City Inspections Office, the Chief of the Fire Prevention Bureau of the City, and an employee of plaintiff construction company, the project supervisor for this project. During these discussions plaintiff was advised that the sprinkler ordinance was a part of the Fire Prevention Code of the City of Winston-Salem, not a part of the Building Code, and that the City would require a complete sprinkler system for this eight-story building.

On 6 March 1974 defendant issued a building permit to plaintiff Harold Greene, one of the partners in Equity Associates, to construct an eight-story building on the property on Akron Drive, and plaintiffs, with notice of the enactment of the sprinkler ordinance, proceeded with construction without providing for a sprinkler system.

On 14 March plaintiffs' architect and engineer for the project requested a ruling from the Division of Engineering of the North Carolina Department of Insurance as to whether building projects in Winston-Salem must comply with the 18 December ordinance. In response to the inquiry, the Chief Engineer of the Division of Engineering of the North Carolina Department of Insurance wrote that, based upon the provisions of Chapter 143 of the General Statutes, particularly G.S. 143-138(e), he was of the opinion that the Winston-Salem Ordinance "would not be legally effective until it has been approved by the State Building Code Council and it should be noted that such ordinance has not been submitted to or approved by the Building Code Council."

On 11 April 1974 the Fire Marshal of Winston-Salem advised plaintiffs that unless they complied with the 18 December ordinance, it would be necessary "for us to withhold a certificate of occupancy or bring legal proceedings to enforce this requirement before this building may be used. . . . "

On 3 July 1974 this action was instituted challenging the validity and the enforcement against plaintiffs of the 18 December 1973 ordinance. The cause was heard on stipulated facts by Judge Exum at the 26 August 1974 civil term of Forsyth Superior Court. At that time the mechanical trades had completed a substantial portion of their work, and the finishing trades had commenced their work. At this stage of construction,

---

Greene v. City of Winston-Salem

---

the installation of a sprinkler system would require that the walls and floors be partially torn out, and the resulting costs, including the costs of the sprinkler system, would amount to substantially more than $100,000.

It was stipulated that the City has neither sought nor obtained the approval of the State Building Council to the changes embodied in the 18 December 1973 ordinance and that neither the Building Code nor the provisions of G.S. 69-29 require a sprinkler system to be installed in the motor inn in litigation.

Judge Exum concluded, *inter alia,* that a justiciable controversy existed between the parties, determined that the ordinance was invalid and unenforceable, and thereupon enjoined the City from enforcing such ordinance. Defendant appealed.

*Womble, Carlyle, Sandridge & Rice, by Roddey M. Ligon, Jr., Attorney for Appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey and William G. McNairy, Attorneys for Appellees.*

BRANCH, Justice.

The stipulated facts in this case present the question of whether the Winston-Salem ordinance requiring sprinkler systems in high-rise buildings is a building regulation ordinance subject to the approval of the State Building Code Council or a fire protection ordinance emanating from the police power of the City and therefore not requiring such approval. The answer to this question turns upon our construction of the relevant statutes.

G.S. 143-138 provides for the establishment of a North Carolina State Building Code. The statute, in relevant part, provides:

> (b) Contents of the Code.—The North Carolina State Building Code, as adopted by the Building Code Council, may include reasonable and suitable classifications of buildings and structures, both as to use and occupancy; general building restrictions as to location, height, and floor areas; rules for the lighting and ventilation of buildings and structures; requirements concerning means of egress from buildings and structures; requirements concerning means of

ingress in buildings and structures; regulations governing construction and precautions to be taken during construction; regulations as to permissible materials, loads, and stresses; regulations of chimneys, heating appliances, elevators, and other facilities connected with the buildings and structures; regulations governing plumbing, heating, air conditioning for the purpose of comfort cooling by the lowering of temperature, and electrical systems; *and such other reasonable rules and regulations pertaining to the construction of buildings and structures and the installation of particular facilities therein as may be found reasonably necessary for the protection of the occupants of the building or structure, its neighbors, and members of the public at large.*

*The Code may contain provisions regulating every type of building or structure, wherever it might be situated in the State.*

\* \* \*

(e) Effect upon Local Building Codes.—The North Carolina State Building Code shall apply throughout the State, from the time of its adoption. However, any political subdivision of the State may adopt a building code or building rules and regulations governing construction within its jurisdiction. The territorial jurisdiction of any municipality or county for this purpose, unless otherwise specified by the General Assembly, shall be as follows: Municipal jurisdiction shall include all areas within the corporate limits of the municipality; county jurisdiction shall include all other areas of the county. *No such building code or regulations shall be effective until they have been officially approved by the Building Code Council as providing adequate minimum standards to preserve and protect health and safety, in accordance with the provisions of subsection (c) above.* While it remains effective, such approval shall be taken as conclusive evidence that a local code or local regulations supersede the State Building Code in its particular political subdivision. Whenever the Building Code Council adopts an amendment to the State Building Code, it shall consider any previously approved local regulations dealing with the same general matters, and it shall have authority to withdraw its approval of any such local code or regulations unless the local governing body

makes such appropriate amendments to that local code or regulations as it may direct. *In the absence of approval by the Building Code Council, or in the event that approval is withdrawn, local codes and regulations shall have no force and effect.* (Emphasis supplied.)

This Building Code has been ratified and adopted by the State Building Code Council, pursuant to G.S. 143-138(b), and therefore has the full force and effect of law. *In re O'Neal,* 243 N.C. 714, 92 S.E. 2d 189. Pursuant to this authority, the Code Council, by Chapter 9 of the Code, has prescribed standards for sprinkler systems, including provisions for the types of buildings which shall have automatic sprinklers.

G.S. 160A-174, the statute which delegates and limits the general ordinance-making powers of cities and towns, provides:

(a) A city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances.

(b) A city ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when:

(1) The ordinance infringes a liberty guaranteed to the people by the State or federal Constitution;

(2) The ordinance makes unlawful an act, omission or condition which is expressly made lawful by State of federal law;

(3) The ordinance makes lawful an act, omission, or condition which is expressly made unlawful by State or federal law;

(4) The ordinance purports to regulate a subject that cities are expressly forbidden to regulate by State or federal law;

(5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation.

   (6) The elements of an offense defined by a city
   ordinance are identical to the elements of an of-
   fense defined by State or federal law.

The fact that a State or federal law, standing alone, makes
a given act, omission, or condition unlawful shall not pre-
clude city ordinances requiring a higher standard of con-
duct or condition.

It has long been the law of this State that "towns and cities
are parcels of the State; their corporate powers are emanations
from the State for purposes of convenience, and it could never
be allowed that they should contravene the policy of the State,
or exercise powers not conferred, much less such as are either ex-
pressly or impliedly prohibited." *Weith v. Wilmington,* 68 N.C.
24. This well-settled doctrine is fully stated and summarized in
*Asheville v. Herbert,* 190 N.C. 732, 130 S.E. 861:

   It is the accepted doctrine in this jurisdiction that the
   powers of a municipality [are], accurately described in
   Dillon on Municipal Corporations (5 ed.), sec. 237, as
   follows: 'It is a general and undisputed proposition of law
   that a municipal corporation possesses and can exercise the
   following powers, and no others: First, those granted in
   express words; second, those necessarily or fairly implied
   in or incident to the powers expressly granted; third, those
   essential to the accomplishment of the declared objects and
   purposes of the corporation—not simply convenient, but
   indispensable.' *Smith v. New Bern,* 70 N.C., 14; *S. v. Webber,*
   107 N.C. 962, 965; *S. v. Eason,* 114 N.C., 787, 791; *Love v.
   Raleigh,* 116 N.C., 296, 307; *S. v. Higgs,* 126 N.C., 1014,
   1021; *Elizabeth City v. Banks,* 150 N.C., 107; [further cita-
   tions omitted].

   All acts beyond the scope of the powers granted to a
   municipality are void. [Citations omitted.] In construing
   the extent of the powers of municipalities, the fundamental
   and universal rule is, that while the construction is to be
   just, seeking first of all for the legislative intent in order to
   give it a fair effect, yet any fair, reasonable or substantial
   doubt as to the extent of the power is to be determined in
   favor of the public and against the municipality. [Citation
   omitted.] This grows out of the fact that the majority-will
   controls, and that minorities are bound by the acts of
   majorities, and that the public officers occupy a trust

relation in which the inhabitants of the city are *cestuis que trustent,* and the officers are trustees. . . .

We note that appellant construes the last sentence of G.S. 160A-174(b) as a grant of authority which supports the enactment of the ordinance of 18 December. We do not agree. Initially there can be no application of this portion of the statute to the present facts since the State has not made it unlawful to construct this motor inn without the inclusion of a sprinkler system. Further, the words "standing alone," found in this portion of the statute, direct our attention to the other portions of the statute that specify certain instances in which an ordinance is invalid because of inconsistency with State or federal law. The following section of the statute is especially pertinent:

> (b) A city ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when:

>                    *       *       *

> (5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation.

Almost a century ago, in *Town of Washington v. Hammond,* 76 N.C. 33, this Court stated the principle governing cases in which there is conflict between municipal ordinances and general State law:

> The true principle is that municipal by-laws and ordinances must be in harmony with the general laws of the State, and whenever they come in conflict with the general laws, the by-laws and ordinances must give way. The question does not arise, in our case, whether the State may not expressly confer upon a municipal corporation the power to pass local laws which shall exclude the general laws of the State on particular and enumerated subjects. By-laws and State laws may stand together, if not inconsistent . . . . [Citation omitted.]

*Accord: Davis v. Charlotte,* 242 N.C. 670, 89 S.E. 2d 406; *State v. Stallings,* 189 N.C. 104, 126 S.E. 187; *State v. Freshwater,* 183 N.C. 762, 111 S.E. 161; *State v. Dannenberg,* 150 N.C. 799, 63 S.E. 946.

In *State v. Williams,* 283 N.C. 550, 196 S.E. 2d 756, this Court considered the validity of a local ordinance which made it unlawful for a person to possess beer on the public streets of Mount Airy. At that time G.S. 18A-35 provided that, except as otherwise provided in Chapter 18A of the General Statutes, the purchase, transportation, and possession of malt beverages by individuals eighteen years or older for their own use was permitted without restriction or regulation. In holding the local ordinance invalid, this Court, speaking through Justice Moore, stated:

> The General Assembly clearly intended to pre-empt the regulation of malt beverages in order to prevent local governments from enacting ordinances such as the one in question. . . .

> The ordinance in question is not consistent with the general law in that . . . the ordinance purports to regulate a field in which a state statute has provided a complete and integrated regulatory scheme to the exclusion of local regulations. . . .

Although the majority of cases dealing with a conflict between a municipal ordinance and a state statute have arisen in criminal actions, the same principles apply in civil causes. In *Tastee-Freez, Inc. v. Raleigh,* 256 N.C. 208, 123 S.E. 2d 632, a peddler of ice cream and other dairy products had procured a State license to carry on the business of dispensing these products from a mobile freezer unit along the streets and highways, including the streets of defendant city. G.S. 105-33(d) provided that the State licenses issued should constitute "a personal privilege to conduct the profession or business named in the State license." The City, by a provision incorporated in its own licensing ordinance, sought to prevent this licensee from peddling his products along the city streets. This Court held that, because the city ordinance purported to prohibit a person from exercising a privilege granted by a State license, the city ordinance was invalid and unenforceable.

A similar situation existed in *Staley v. Winston-Salem,* 258 N.C. 244, 128 S.E. 2d 604. In that case, an applicant for a municipal license to sell wines on his restaurant premises had complied with all of the requirements of the alcoholic beverage control statutes of North Carolina and the regulations of the State Board of Alcoholic Control adopted thereunder, but the

municipality had passed an ordinance which prohibited the sale of wine in this particular location. This Court unanimously held that, since the provisions of State law regulating the sale of alcoholic beverages permitted the sale of wine in plaintiff's restaurant, the City "could not set at naught a statewide statute permitting the sale of wine in such restaurants. Such sales are a permitted part of authorized business."

Appellant argues that the enactment of G.S. 69-29, requiring sprinkler systems in certain buildings, indicates that the General Assembly did not intend to vest in the State Building Code Council sole regulatory authority in this area. We do not think that the Legislature must retain sole authority, or completely delegate to one agency all authority, in order to provide a complete and integrated regulatory scheme which would exclude local regulation. Further, the intent to vest controlling regulatory authority in the Building Code Council appears within the provisions of G.S. 69-29 in that the Legislature provided that the installation of the sprinkler systems required by statute must ultimately be of such design, condition, and scope "as may be approved by the North Carolina Building Code Council."

The legislative intention to create a complete and integrated regulatory scheme is further evidenced by the language of G.S. 143-139 (b), which delegates to the Commissioner of Insurance the responsibility of administering and enforcing the provisions of the North Carolina Building Code pertaining "to plumbing, electrical systems, general building restrictions and regulations, heating and air-conditioning, *fire protection* and the construction of buildings generally." (Emphasis supplied.) It is also noteworthy that the power delegated to the Commissioner of Insurance is subject to the power of the Building Code to adopt the procedural requirements necessary for the enforcement of the North Carolina Building Code.

Our contextual reading of the relevant statutes compels the conclusion that the statutes clearly show a legislative intent to provide a complete and integrated regulatory scheme, including regulations as to the installation of sprinkler systems, in all buildings and structures, wherever situate in North Carolina, except as expressly exempted by statute. The preemption of this field is modified by G.S. 143-138 (e) to the extent that any political subdivision of the State may adopt a building code or building rules or regulations which may become effective when

officially approved by the North Carolina State Building Code Council. The City would have us interpret G.S. 160A-174 to empower it to ignore explicit statewide legislative enactments. Such an interpretation would, in effect, permit the City to amend the North Carolina Building Code by the simple expedient of codifying the contested ordinance as a part of its Fire Prevention Code and thereby to evade the clear requirements of G.S. 143-138 (e). This result would elevate nomenclature above substance.

We hold that the challenged ordinance is not consistent with the general law of North Carolina in that it purports to regulate a field in which the General Assembly has provided a complete and integrated regulatory scheme to the exclusion of local regulation. Therefore, the ordinance is invalid and unenforceable.

The judgment of the Superior Court of Forsyth County is

Affirmed.

Justice EXUM took no part in the consideration or decision of this case.