251 S.E.2d 910 (1979)
39 N.C. App. 688
CAROLINAS-VIRGINIAS ASSOCIATION OF BUILDING OWNERS AND MANAGERS, an unincorporated association
v.
Honorable John Randolph INGRAM, North Carolina Commissioner of Insurance, Kern E. Church, Deputy Commissioner, Division of Engineering, North Carolina Department of Insurance, the North Carolina Building Code Council, and S. Ray Moore, Chairman, T. L. Watson, Jr., Vice-Chairman, and John R. Adams, R. Glenn Agnew, John R. Andrew, Frank William Billmire, Moodye R. Clary, John H. Emerson, C. B. Galphin, Walter F. Perry, and Edward L. Woods, Members of the North Carolina Building Code Council.
No. 7710SC899.
Court of Appeals of North Carolina.
February 20, 1979.
*913 Berry, Bledsoe & Hogewood by H. A. Berry, Jr., Dean Gibson, and Jackie D. Drum, Charlotte, for plaintiff-appellee.
Atty. Gen. Rufus L. Edmisten by Asst. Atty. Gen. Isham B. Hudson, Jr., Raleigh, for defendants-appellants.
PARKER, Judge.
The question presented is whether the Legislature has granted the North Carolina State Building Code Council power to amend the State Building Code so as to impose new and more stringent requirements mandating that changes be made in existing buildings which, prior to such amendment, conformed to all requirements of the Code and which are neither undergoing alteration nor change in use. The trial court held that it had not. We agree and affirm.
The Council is an agency of the State created by the Legislature by Article 9 of G.S. Ch. 143. As a State agency created by the Legislature, it has only such powers as have been lawfully delegated to it by the Legislature. To ascertain what those powers are requires examination of both the language and the history of the pertinent statutes.
The first legislative Act of statewide application regulating the design and construction of buildings was Ch. 506 of the Public Laws of 1905. That Act, which applied only to incorporated cities and towns of over one thousand inhabitants, provided for the establishment of fire limits within such cities and towns and directed that within the fire limits so established no wooden or frame building should thereafter be erected. The Act then provided detailed specifications governing such matters as the design, materials, and construction of foundations, walls, roofs, fireplaces, chimneys, and flues. Sec. 26 of the Act provided that "before a building is begun," the owner should apply for a building permit, which permit should be in writing and should contain a provision that "the building shall be constructed according to the requirements of the building law." Other sections, e. g. Sections 8, 14, and 17, made express reference to buildings "hereafter erected." Sec. 9 of the Act provided that "all regulations contained in this law shall apply also where walls or buildings are raised, altered or repaired." Sec. 15 applied to buildings which "shall appear to the inspector to be especially dangerous in case of fire by reason of bad condition of walls, overloaded floors, defective construction, decay or other causes." A reading of the entire 1905 Act makes it clear that the Legislature intended its regulations governing design and construction to apply only to buildings to be erected, altered, or repaired after its effective date, with special provision being made in Sec. 15 for buildings which might become "especially dangerous in case of fire by reason of bad condition of walls, overloaded floors, defective construction, decay or other causes." Nothing evidences a legislative intent that the construction regulations imposed by the Act should apply to any existing building which was not being altered or repaired and which was not "especially dangerous."
Certain of the detailed regulations of the 1905 Act were amended by Ch. 192 of the Public Laws of 1915. Sec. 4 of the 1915 Act rewrote the above quoted portion of Sec. 9 of the 1905 Act to read as follows: "All rules, regulations and requirements contained in the building law, or set out in this sub-chapter in regard to the erection of buildings, or any part thereof, shall apply also where any building or walls, or any part thereof, is proposed to be raised, altered, repaired or added to, in order that *914 the objects of the law may be accomplished and deficiencies and menaces to the safety of the city or town may not be made or perpetuated." Thus, the 1915 amendment carried forward the basic distinction which the 1905 Act had recognized between buildings erected before and after passage of the law by making the construction regulations applicable to existing buildings only "where any building or walls, of any part thereof, is proposed to be raised, altered, repaired or added to."
The construction regulation provisions of the 1905 Act, as amended in 1915, were codified in Art. 11 of Ch. 56 of the Consolidated Statutes, appearing therein as Sections 2748 through 2776. These statutes remained the only general laws of statewide application regulating building design and construction practices until enactment of Ch. 392 of the 1933 Session Laws. This Act for the first time created an official State Building Code Council. This Council was composed of five members who were appointed by the Governor. Sec. 6 of the Act provided in part:
It shall be the duty of the Council not only to make recommendations to the Insurance Commissioner relative to the proper construction of the pertinent provisions of the Building Code but it shall also recommend that he shall allow materials and methods of construction other than those required by the Building Code to be used, when in its opinion such other material and methods of construction are as good as those required by the Code, and for this purpose the requirements of the Building Code as to such matters shall be considered simply as a standard to which construction shall conform.
Interpreting the powers granted to it by the 1933 Act somewhat broadly, the Building Code Council adopted a State Building Code, which, after being submitted to and approved by the Insurance Commissioner, was promulgated in 1936 as the State Building Code. Section 1.11 of this code, entitled "Purpose," was as follows:
Section 1.11. Purpose. The purpose of the code is to provide certain minimum standards, provisions and requirements for safe and stable design, methods of construction and uses of materials in buildings and/or structures hereafter erected, constructed, enlarged, altered, repaired, moved, converted to other uses or demolished and to regulate the equipment, maintenance, use and occupancy of all buildings and/or structures.
Section 1.2, entitled "Scope," provided in Subsec. 1.21, that the code "shall apply to all new buildings, structures and additions thereto" except for dwellings, apartment buildings for not more than two families, buildings used for agricultural purposes, and temporary buildings. Section 1.22 provided that the code "shall apply to all alterations which affect the structural strength, fire hazards, exits, lighting or sanitary conditions of any building." Section 1.23 provided that the code "shall apply to all buildings which are to be devoted to a new use for which the requirements of this code are in any way more stringent that the requirements covering the previous use of the building." Thus, the "Purpose" and "Scope" provisions of the 1936 Code made it clear that the Code applied to new buildings and to alterations or changes in use of existing buildings and that it did not apply to existing buildings which were neither being altered nor changed in use.
In 1941 the Legislature, by Ch. 280 of the Public Laws of 1941, "ratified and adopted" the 1936 Code which had been promulgated by the Building Code Council. By the same 1941 Act the Legislature empowered the Council to adopt additional regulations provided it "shall not establish any standard or adopt or promulgate any rule, regulation, classification, limitation or restriction more rigid, exacting or stringent in its requirements" than was promulgated by the Council in its 1936 Code. The inclusion of this limitation in the 1941 Act evidenced a clear legislative intent to prohibit the Council from intruding into areas which the Legislature had not yet decided should be regulated. One area which it is clear the Legislature had not yet authorized the Council to regulate was that of existing buildings which were neither being altered or changed in use.
*915 The present statutory provisions from which the present Building Code Council derives its existence and powers are contained in Article 9 of G.S. Ch. 143. The basic portions of this Article were enacted by Ch. 1138 of the 1957 Session Laws. G.S. 143-138(a) expressly empowers the Council "to prepare and adopt, in accordance with the provisions of this Article, a North Carolina State Building Code." G.S. 143-138(c) specifies standards to be followed by the Council in adopting and amending the Code by requiring that the provisions of the Code "shall conform to good engineering practice, as evidenced generally by" certain specifically referred to and generally recognized national codes. This replaced the provision of the 1941 Act that the Council could adopt no requirement more stringent than contained in the 1936 Code. The Legislature carefully defined the scope and applicability of the Code which it authorized the Council to adopt in G.S. 143-138(b) as follows:
(b) Contents of the Code.The North Carolina State Building Code, as adopted by the Building Code Council, may include reasonable and suitable classifications of buildings and structures, both as to use and occupancy; general building restrictions as to location, height, and floor areas; rules for the lighting and ventilation of buildings and structures; requirements concerning means of egress from buildings and structures; requirements concerning means of ingress in buildings and structures; regulations governing construction and precautions to be taken during construction; regulations as to permissible materials, loads, and stresses; regulations of chimneys, heating appliances, elevators, and other facilities connected with the buildings and structures; regulations governing plumbing, heating, air conditioning for the purpose of comfort cooling by the lowering of temperature, and electrical systems; and such other reasonable rules and regulations pertaining to the construction of buildings and structures and the installation of particular facilities therein as may be found reasonably necessary for the protection of the occupants of the building or structure, its neighbors, and members of the public at large.
The Code may contain provisions regulating every type of building or structure, wherever it might be situated in the State.
Basically, the question presented when undertaking to ascertain the meaning of the above quoted portions of G.S. 143-138(b) is to determine whether the Legislature, when it empowered the Council to adopt a State Building Code, intended to authorize the Council to adopt a code regulating construction or a code regulating structures, that is to say, a code governing building or a code governing buildings.
When the first sentence G.S. 143-138(b) is analyzed grammatically, it will be seen that the subject and verb, "The North Carolina State Building Code . . . . may include," are followed by a long series of objects which carefully list the kinds of regulations the Code may contain. The concluding item in this list, "such other reasonable rules and regulations," is followed by the gerundive phrase, beginning with the word "pertaining," which defines the authorized scope of applicability of the code's regulations, the scope of the subject matter of which has been defined by the long series of objects immediately preceding. The gerundive phrase makes clear that the code's regulations must pertain to "the construction of buildings and structures and the installation of particular facilities therein as may be found reasonably necessary for the protection of the occupants of the building or structure, its neighbors, and members of the public at large." (Emphasis added.) It seems clear that the initial portion of this phrase containing the words, "the construction of buildings and structures," refers to new construction; the remainder of the phrase is at best ambiguous in this regard.
Appellants contend that the second sentence of G.S. 143-138(b) serves to make clear that the Legislature intended to grant the Council power to adopt building code provisions regulating every existing building, *916 whether or not such existing building was being altered or changed in use. We do not agree. Had the Legislature intended that the Code might regulate every building in the State, including every existing building which was neither being altered or changed in use, it could easily have said so. Instead, it inserted the words "type of" between the word "every" and the word "building," by so doing emphasizing that the Code might regulate every building, whatever its type, e. g., commercial, industrial, residential, etc. This interpretation of the sentence is reinforced by the proviso which immediately follows which makes the Code inapplicable to certain farm buildings.
Any uncertainty as to legislative intent which might result from such ambiguity as exists in the language of G.S. 143-138(b) is to a considerable extent dispelled when the enforcement provisions of Article 9 of G.S. Ch. 143 are examined. G.S. 143-138(h) contains the following sentence which was added by Sec. 6 of Ch. 1229 of the 1969 Session Laws:
In case any building or structure is erected, constructed or reconstructed, or its purpose altered, so that it becomes in violation of the North Carolina State Building Code, either the local enforcement officer of the State Commissioner of Insurance or other State official with responsibility under G.S. 143-139 may, in addition to other remedies, institute any appropriate action or proceedings (i) to prevent such unlawful erection, construction or reconstruction, or alteration of purpose, (ii) to restrain, correct, or abate such violation, or (iii) to prevent the occupancy or use of said building, structure, or land until such violation is corrected.
This sentence evidences a Legislative understanding that the Building Code which it had authorized the Council to adopt should regulate only new construction or buildings being reconstructed or altered in purpose.
Appellants point out that on two occasions, once by Ch. 280 of the 1941 Public Laws and again in Ch. 1138 of the 1957 Session Laws, the Legislature expressly ratified and adopted building codes theretofore promulgated by the Building Code Council which contained provisions regulating passively existing buildings. From this they argue that the Legislature by implication recognized the power of the Council to adopt such provisions. We do not agree. Many of the provisions relating to passively existing buildings contained in the 1936 Code which the Legislature ratified and adopted in the 1941 Act were simply carrying forward building regulations which the Legislature had itself enacted as early as 1905. That the Legislature "ratified" the Council's action recognizing that the Legislature's own statutory regulations continued in effect hardly furnishes a basis for implying that the Legislature thereby acknowledged the power of the Council to enact such regulations on its own. Moreover, the ratification and adoption by the Legislature of regulations previously promulgated by an administrative agency does not necessarily carry with it the implication that the Legislature thereby recognized that the agency had previously been granted the power to adopt such regulations. Indeed, quite the reverse implication may be logically drawn, else why was it necessary for the Legislature to ratify what the agency had done?
Greene v. City of Winston Salem, 287 N.C. 66, 213 S.E.2d 231 (1975), cited by appellants, does not support their contention that the Building Code Council was empowered to regulate all existing buildings. In Greene the Court did find a legislative intent to create a complete and integrated regulatory scheme requiring installation of sprinkler systems in certain buildings and that this scheme involved the Building Code Council, but the Court pointed out that "the intent to vest controlling regulatory authority in the Building Code Council appears within the provisions of G.S. 69-29 in that the Legislature provided that the installations of the sprinkler systems required by statute must ultimately be of such design, condition, and scope `as may be approved by the North Carolina Building Code Council.'" 287 N.C. at 75, 213 S.E.2d *917 at 237. Thus, the role of the Building Council was to establish standards for the sprinkler systems, the installation of which had been mandated by the Legislature itself by specific statutory enactment. The "complete and integrated regulatory scheme" of which the opinion in Greene spoke was not established by a single statute but by "statutes." By G.S. 69-29 the Legislature required automatic sprinkler systems to be provided in certain types of buildings; only the design, construction and scope of such systems were made subject to the approval of the Council. The very care with which individual sections of G.S. Ch. 69 spell out fire protection requirements for certain existing buildings demonstrates that the Legislature intended to retain for itself the authority to mandate the equipment of existing buildings with fire protection devices. The authority which it granted the Building Code Council to establish technical standards for such devices was a much more limited one, calling for technical determinations in the field of the Council's expertise rather than in the field of broad legislative policy. It can hardly be supported that the Legislature intended to delegate to the Council in G.S. Ch. 143 decisions which it had made itself in G.S. Ch. 69.
The problem presented by this case, as with every case involving interpretation of a statute, ultimately centers on ascertaining the true intent of the Legislature. Realty Co. v. Trust Co., 296 N.C. 366, 250 S.E.2d 271 (1979). This intent is to be found in the wording of the statute itself, viewed against the background of its history and with due regard given for the reason for its enactment and its relationship and interplay with other statutes. So examining G.S. 143-138(b), we find in it no clearly expressed grant of power from the Legislature to the Building Code Council to amend the State Building Code so as to impose new and more stringent requirements upon existing buildings which, prior to such amendment, fully complied with the Code and which are neither being altered or changed in use. Further, we find nothing in the wording of the statute evidencing a legislative intent that the grant of such a drastic power should be implied. The history of the statute and its interplay with other statutes strongly negative such an implication.
We find, therefore, that no express or necessarily implied power has been granted by our Legislature to the Building Code Council to amend the State Building Code in the manner which the Council attempted to do when it adopted Section 1008 of the Code. Accordingly, the judgment appealed from is
Affirmed.
CLARK and ERWIN, JJ., concur.