LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

LAMAR OUTDOOR ADVERTISING, INC., Petitioner v. THE CITY OF HENDERSONVILLE ZONING BOARD OF ADJUSTMENT and THE CITY OF HENDERSONVILLE, Respondents

No. COA01-1252

(Filed 31 December 2002)

**1. Zoning— outdoor advertising—no state preemption**

The North Carolina Outdoor Advertising Control Act does not preempt local regulation of outdoor advertising because the language in the Act proclaimed a public policy and provided a basis for regulating outdoor advertising, but did not express an intention to regulate outdoor advertising on a statewide basis or to preclude local regulation.

**2. Zoning— outdoor advertising sign—repair to replacement cost ratio—evidence insufficient**

The whole record supported the Board of Adjustment's decision that an outdoor advertising company (Lamar) did not carry its burden of proving the ratio between the cost to repair a billboard and the replacement cost. Although Lamar presented evidence, the Board concluded that a true estimate of the repair costs could not be had without information which had been omitted.

Appeal by petitioner from judgment entered on 6 July 2001 by Judge Dennis J. Winner in Henderson County Superior Court. Heard in the Court of Appeals 14 August 2002.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, for petitioner-appellant.*

*Whitmire & Fritschner, by Samuel H. Fritschner, for respondent-appellee City of Hendersonville.*

*Michael Egan, for respondent-appellee City of Hendersonville Zoning Board of Adjustment.*

HUDSON, Judge.

Lamar Outdoor Advertising, Inc. ("Lamar") is an outdoor advertising company. In April, 2000, a windstorm damaged one of Lamar's billboards ("the Billboard") on leased property ("the Property") in the City of Hendersonville. The Billboard was originally constructed in

LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

1981, within the federally regulated corridor that extends to 660 feet from the nearest edge of a federal primary highway.

On 1 May 2000, a representative of Lamar contacted Susan Cox, the Zoning Administrator for the City of Hendersonville, and asked her how he should proceed to make repairs to the Billboard. Ms. Cox responded by letter 2 May 2000, which advised Lamar to submit a written request for a permit to make the repairs. The letter explained that in its request, Lamar should include the tax value of the Billboard, the replacement cost of one of comparable value and an estimate of the cost of repairs. Lamar sent a letter 5 May 2000 to Ms. Cox, enclosing a Billboard Valuation Worksheet and an estimate of the repair costs, based on the 1991 Billboard Valuation Guide published by the North Carolina Department of Revenue Property Tax Division Ad Valorem Tax Section.

Ms. Cox reviewed Lamar's proposal and by letter 5 July 2000 she denied Lamar's request to repair the Billboard. Specifically, Ms. Cox found that the Billboard was a nonconforming advertising sign and that the cost of repairs would exceed sixty percent of the replacement cost of a sign of comparable quality, the criteria for repairing such signs under section 13-4(b) of the City's Zoning Ordinance. Lamar appealed Ms. Cox's decision to the City Board of Adjustment ("BOA").

The BOA heard evidence from both Lamar and the City. Although Lamar submitted different evidence of lower repair costs from the estimate Lamar earlier sent to Ms. Cox, the BOA upheld the denial of the permit to repair.

Lamar then sought review of the BOA's decision by writ of certiorari in the Superior Court. Superior Court Judge Dennis J. Winner heard arguments from the parties, and upheld the decision of the BOA. Lamar appeals to this Court.

Upon review of a decision from a Board of Adjustment, the superior court should:

(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in

518 IN THE COURT OF APPEALS

LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999). This court, on review of the superior court's order must determine whether the trial court correctly applied the proper standard of review. *Id.*

This court applies the "whole record test" when reviewing the sufficiency of the evidence to support the findings of fact and, in turn, conclusions of law based thereon. *Id.* To do so, we must determine "whether the Board's findings are supported by substantial evidence contained in the whole record." *Id.* Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* "Where the petitioner alleges that a board decision is based on error of law, the reviewing court must examine the record *de novo*, as though the issue had not yet been determined." *Id.* at 470, 513 S.E.2d at 74.

[1] Lamar's first argument is an issue of law: it contends that North Carolina's Outdoor Advertising Control Act, G.S. § 136-126 to -140.1 ("OACA"), preempts the City from enforcing its zoning regulations affecting billboards. The superior court rejected this argument, and upon *de novo* review, so do we.

The General Assembly has conferred upon cities the power to enact ordinances to "define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city . . . . N.C. Gen. Stat. § 160A-174(a). As a limitation on this power, G.S. § 160A-174 provides that:

(b) A city ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when:

. . .

(5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation.

N.C. Gen. Stat. § 160A-174(b)(5) (2001). Thus, to determine whether the General Assembly intended to provide statewide regulation to the exclusion of local regulation, we must determine whether the General

LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

Assembly showed a clear legislative intent to provide such a "complete and integrated regulatory scheme." *Id.*

In seeking to determine what the General Assembly intended when it adopted the OACA, we must look to the "the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Taylor v. Taylor*, 343 N.C. 50, 56, 468 S.E.2d 321, 323 (1996), *reh'g denied*, 343 N.C. 517, 472 S.E.2d 25 (1996). "Where legislative intent is not readily apparent from the act, it is appropriate to look at various related statutes *in pari materia* so as to determine and effectuate the legislative intent." *Craig v. County of Chatham*, 356 N.C. 40, 46, 565 S.E.2d 172, 176 (2002).

In *State v. Williams*, our Supreme Court ruled that state law preempted local regulation of malt beverages in the Town of Mount Airy. *State v. Williams*, 283 N.C. 550, 196 S.E.2d 756 (1973) In that case, the defendants were arrested for the possession of an open container of beer, in violation of a Mount Airy city ordinance. The defendants' motion to quash the warrants was granted because the ordinance prohibiting the possession of open containers of beer in public places conflicted with North Carolina statutes, which allowed possession of malt beverages by eighteen-year-old consumers "without restriction or regulation." *Id.* The Supreme Court looked to the purpose and intent of the legislature in enacting the statute, which was "to establish a *uniform system of control* over the sale, purchase . . . and possession of intoxicating liquors . . . to insure, as far as possible, the proper administration of this Chapter under a *uniform system throughout the State*." *Id.* at 553, 196 S.E.2d at 758 (*quoting* N.C. Gen. Stat. § 18A-1 (1975)) (emphasis added).

Relying in part upon *Williams*, the Supreme Court likewise found a legislative intent to preempt local regulation of sprinkler systems in certain high-rise buildings. *Greene v. City of Winston-Salem*, 287 N.C. 66, 75, 213 S.E.2d 231, 237 (1975). The Court noted that the legislature indicated its intent when it vested controlling regulatory authority in the North Carolina Building Code Council and "provided that the installation of the sprinkler systems required by statute must ultimately be of such design, condition, and scope 'as may be approved by the North Carolina Building Code Council.'" *Id.* at 75, 213 S.E.2d at 237. The Court also noted that the intent to create a

complete and integrated regulatory scheme is further evidenced by the language of [the statute], which delegates to the Commissioner of Insurance the responsibility of administrating

LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

and enforcing the provisions of the North Carolina Building Code pertaining "to plumbing, electrical systems, general building restrictions and regulations, heating and air conditioning, *fire protection* and the construction of buildings generally."

*Id.*

More recently, in *Craig v. County of Chatham*, the Supreme Court found that the stated purpose and intent in the "Swine Farm Siting Act" and the "Animal Waste Management Act" showed that the General Assembly intended that those acts be a "complete and integrated system" for swine farm regulation in North Carolina. *Craig v. County of Chatham*, 356 N.C. 40, 565 S.E.2d 172 (2002). In the Swine Farm Siting Act, the General Assembly included under the Purpose section the following language: "[C]ertain limitations on the siting of swine houses and lagoons for swine farms can assist in the development of pork production, which contributes to the economic development of the State, by lessening the interference with the use and enjoyment of adjoining property." N.C. Gen. Stat. § 106-801 (2001). The Animal Waste Management Act provides in pertinent part that "[i]t is the intention of the State to promote a *cooperative and coordinated* approach to animal waste management among the agencies of the State . . . ." N.C. Gen. Stat. § 143-215.10A (2001) (emphasis added). Upon reviewing the stated purpose and intent of the Swine Farm Siting Act and the Animal Waste Management Act, the Supreme Court concluded that the General Assembly intended to cover the entire field of swine farm regulation in North Carolina.

Turning to the OACA, we note that the General Assembly provided in its "Declaration of Policy" that "[i]t is the intention of the General Assembly to provide and declare herein a public policy and statutory basis for the regulation and control of outdoor advertising." N.C. Gen. Stat. § 136-127 (2001). This provision does not contain preemptive language similar to that in *Williams*, *Greene* or *Craig*. Rather, the language in the OACA indicates simply that the General Assembly intended to proclaim a public policy and provide a statutory basis upon which a government entity could regulate outdoor advertising. We do not conclude that, when it enacted these statutes, the General Assembly expressed an intention to regulate outdoor advertising only on a statewide basis, or to preclude local entities from regulating in this area.

Finding no express intention to preempt in the OACA, we look to its scope and breadth, and likewise find no indication that the

LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

General Assembly intended to preempt local regulation. *See Craig.* Indeed, whereas the General Assembly in the Swine Farm Citing Act specifically limited a county's authority to regulate swine farms, G.S. § 153A-340(b)(1) (2001), the OACA expressly anticipates local involvement.

The very definition of "State law" in the OACA contemplates the involvement of local governments: "a State constitutional provision or statute, or an ordinance, rule or regulation enacted or adopted by a State agency or *political subdivision* of a State pursuant to a State Constitution or statute." N.C. Gen. Stat. § 136-128(6) (2001) (emphasis added). In addition, G.S. § 136-136 specifically demands local involvement in the area of outdoor advertising regulation, by requiring that local zoning authorities notify the Department of Transportation ("DOT") if they establish or change "commercial and industrial zones within 660 feet of the [primary highway] right-of-way." N.C. Gen. Stat. § 136-136 (2001). Beyond the statutory scheme set out in the General Statutes, the DOT, under authority vested in it by Article 11, even defers to local regulation of outdoor advertising when it provides that conforming signs, in order to be rebuilt, must "not conflict with any applicable state, federal or *local* rules, regulations or ordinances." 19A NCAC 2E .0225(b)(2) (April 2002) (emphasis added). Thus, we conclude that the OACA does not preempt local regulation of outdoor advertising.

**[2]** Lamar next argues that both the BOA and the superior court erred in their interpretation of section 13-4(b)(7) of the City's zoning ordinances regarding the replacement cost of a sign of comparable value. However, a review of the record discloses that the BOA did not expressly interpret section 13-4(b)(7). Its only reference to section 13-4(b)(7) is in Conclusion of Law number 1, which reads as follows:

> 1. Lamar did not carry its burden, pursuant to Hendersonville Zoning Ordinance[] § 13-4-(b)(7) of showing that it could "repair" its billboard for less than or equal to 60% of the replacement cost of the sign.

On review, the superior court noted that although petitioner argued that the court should review this conclusion *de novo*, it concluded that the standard of review is whether or not the BOA's decision was supported by the evidence. The superior court conducted the proper review and thus, we also apply the "whole record" test to our analy-

LAMAR OUTDOOR ADVER., INC. v. CITY OF HENDERSONVILLE BD. OF ADJUST.

[155 N.C. App. 516 (2002)]

sis of the sufficiency of the evidence to support the findings and conclusions on this issue (appellants fourth argument). *See Whiteco Outdoor Adver.*, 132 N.C. App. at 468, 513 S.E.2d at 73.

Lamar argues that "The City presented no witness that could contradict or rebut [Lamar's witness Derek Collier's] testimony with quotes of billboard components of comparable quality." However, the burden of proving that the billboard could be repaired within the criteria set out in section 13-4-(b)(7) rested with Lamar. Hendersonville's Zoning Ordinance provides that "[t]he burden of proof shall rest with the applicant in all proceedings required or authorized by [the Zoning Ordinance]." City of Hendersonville, N.C., Zoning Ordinance art. 6, sec. 6-18.

In its decision, the BOA made findings of fact that included, *inter alia*, that the "board did not hear complete, accurate and credible evidence of the actual cost to 'repair' the billboard," and that the "board did not hear complete, accurate and credible evidence of the replacement cost of the billboard." In addition to Conclusion of Law number 1, the BOA reached the following Conclusion of Law:

2. Lamar did not carry its burden of proving that the Zoning Administrator erred in denying its request for a permit to "repair" the billboard.

Our review of the record, including testimony from Lamar and The City, discloses substantial evidence to support the BOA's findings of fact, which in turn support its conclusions of law. The figures that Lamar presented to the BOA to prove that it could reconstruct the billboard for less than sixty percent of the replacement cost of a sign of comparable value were inadequate in several respects. Most notably, the repair cost figure that Lamar presented to the BOA was lower than the repair cost figure that Lamar presented to Susan Cox when it first applied for a permit to reconstruct, due to several changes and omissions made by Lamar in the subsequent repair cost figure. First, Lamar lowered the labor cost estimate by $560.00 from the original estimate submitted to Susan Cox. Second, Lamar's own witness, Derek Collier, testified that the cost to rebuild the sign, as presented to the BOA, omitted several essential components of the reconstruction cost including, the costs for certain lighting parts, the costs for electrical wires for the billboard, and the labor costs for installing the electrical wiring. Though Lamar failed to include these lighting and wiring costs in the figure presented to

Susan Cox as well as the BOA, without such information a true estimate of the repair cost could not be had, and a true cost of repair was not put into evidence.

The foregoing evidence supports the BOA's decision that, under the Hendersonville Zoning Ordinance, Lamar did not meet its burden of proving the ratio between the cost to repair the sign and the replacement value of a sign of comparable quality. While Lamar may have presented evidence in an attempt to prove these facts, the BOA concluded it was not enough. Where the whole record supports this determination, "neither the trial court nor this Court may substitute its own judgment for that of the Board's." *Whiteco Outdoor Adver.*, 132 N.C. App. at 469, 513 S.E.2d at 74. In light of our holding that the BOA's decision was supported by the whole record, we also hold that the BOA's decision was neither arbitrary nor capricious, as the BOA reasonably concluded from the evidence that Lamar did not carry its burden of proof.

Thus, we affirm the superior court's order upholding the decision of the City of Hendersonville Zoning Board of Adjustment.

Affirmed.

Judges WYNN and CAMPBELL concur.