The Honorable Ruth Whitaker State Senator Post Office Box 349 Cedarville, Arkansas 72932
Dear Senator Whitaker:
I am writing in response to your request for an opinion on the following two questions:
 1. Is it legal for the State of Arkansas, more particularly the Department of Health, to have a contract with a lobbyist and/or a lobbying group with the purpose of influencing legislative action or administrative action?
 2. Can funds received from the Department of Health be used for said lobbying purposes?
RESPONSE
You have not provided any specifics as to the nature of the contract in question. That is, you have not described the specific nature of the lobbying activity contemplated or the exact source of the funds used to support the contract. Without such specific information, I can only opine on the issue generally. Reference to all the pertinent facts would be necessary to opine conclusively with regard to any given contract. That said, I must conclude, as a general matter, that state law does not provide clear answers to your questions. In my opinion, however, the execution of such a contract is in all likelihood unauthorized.
Question 1 — Is it legal for the State of Arkansas, moreparticularly the Department of Health, to have a contract with alobbyist and/or a lobbying group with the purpose of influencinglegislative action or administrative action?
I have been unable to find any state statute or judicial precedent in this state addressing this issue. State agencies, including the Arkansas Department of Health are of course authorized to enter into professional and consultant services contracts. See A.C.A. § 19-11-1001 to -1012 (Supp. 2003). I assume from the wording of your question that this type of contract is at issue. Most such contracts with a contract amount exceeding twenty-five thousand dollars must be presented to the Legislative Council or to the Joint Budget Committee before their execution date. A.C.A. § 19-11-1006(a)(1). Thereafter, such contracts must be approved by the State Procurement Director. A.C.A. § 19-11-1008.
Your question, however, seems to focus more on the subjectmatter of such a contract and whether it is legal for a state agency to enter into a contract with a lobbyist or lobbying group to attempt to influence legislative or administrative action. As stated above, I have found no Arkansas law addressing this topic. Additionally, there is limited authority on the question in other jurisdictions.
It is fairly well settled, however, that state agencies, as creatures of the state, have no inherent powers. Such agencies have only such powers as are expressly conferred by statute or necessarily implied from those statutes. See e.g., Smith v.Refunding Board, 192 Ark. 145, 90 S.W.2d 494 (1936). See also,City of Sioux City v. Iowa Department of Revenue and Finance,666 N.W.2d 587 (2003); Silver Lake Sanitary District v.Wisconsin Department of Natural Resources, 232 Wis.2d 217,607 N.W.2d 50 (1999); 6th Neches v. Aldridge, 992 S.W.2d 684
(Tex. 1999); Springfield Metropolitan Exposition and AuditoriumAuthority v. Castle, 90 Ill. App.3d 710, 413 N.E.2d 443 (1980);Carolinas-Virginias Association of Building Owners and Managersv. Ingram, 39 N.C.App. 688, 251 S.E.2d 910 (1979); Addison v.Department of Motor Vehicles, 69 Cal. App. 3d 486,138 Cal. Rptr. 185 (1977); Massachusetts Commission AgainstDiscrimination v. Liberty Mutual Insurance Company,371 Mass. 186, 356 N.E.2d 236 (1976); Charton Corp. v. Brockette,534 S.W.2d 401 (1976); Harris County Water Control ImprovementDistrict No. 58 v. City of Houston, 357 S.W.2d 789 (1962);Ashton v. State, 173 Neb. 78, 112 N.W.2d 540 (1961); Goldingv. Salter, 234 Miss. 567, 107 So.2d 348 (1958); and State v.Maybury, 49 Wash.2d 533, 304 P.2d 663 (1956). See also, 81A C.J.S. States, § 224.
This principle has been invoked by a number of Attorneys General from other states in opining that state agencies lack power to contract for lobbying services. See e.g., Fla. Op. Att'y. Gen. 2000-09 (Miami River Commission has no authority to retain a lobbyist where not authorized by statute); Fla. Op. Att'y. Gen. 97-58 (Health and Human Services Board may not hire an individual to lobby); La. Op. Att'y. Gen. 90-126 (Amite River Basin Commission has no statutory authority to expend public funds for lobbying); Nev. Op. Att'y. Gen. 90-17 (Nevada Department of Wildlife has no authority to hire an individual whose sole duty is to lobby the legislature, or to contract with an independent contractor for lobbyist services); and Kan. Op. Att'y. Gen. 83-52 (Kansas Wheat Commission may not contract for lobbying services).But see contra, Nev. Op. Att'y. Gen. 91-5 ("reversing" the opinion of the Attorney General's predecessor with regard to the Nevada Department of Wildlife's authority to hire a lobbyist and concluding that such action was a "necessary activity" implied in the statement of the Department's general powers.) At least one Attorney General has concluded more generally that an expenditure for lobbying "would not be an allowable expenditure of tax dollars under present law." See 1998 N.D. Op. Att'y. Gen. L-152. See also generally, Note, The Use of Public Funds forLegislative Lobbying and Electoral Campaigning, 37 Vand. L.Rev. 433 (1984) (discussing the legality of lobbying activities of local governmental units).
Most of the decisions listed above, however, also note that it is allowable for employees of the various state agencies to lobby or act as advocates for their agencies. See Fla. Op. Att'y. Gen. 2000-09; Fla. Op. Att'y. Gen. 97-58; Nev. Op. Att'y. Gen. 90-17; and Kan. Op. Att'y. Gen. 83-52. See also, A.C.A. §21-8-601(a)(2)(C) (Supp. 2003) (exempting action in a person's official capacity as a public servant from lobbyist registration requirements under certain circumstances). See also Op. Att'y Gen. 2001-031 (concluding that a city might use hamburger tax revenue to participate in lobbying, assuming that the lobbying serves a public purpose and relates to matters that fall within the scope of the statute authorizing the tax).
The Arkansas Department of Health is created at A.C.A. §25-9-101. A number of powers and duties are set out in that subchapter as well as in A.C.A. §§ 20-7-101 to -310. Without exhaustively recounting the substance of those provisions, it is fair to say that none of them expressly authorize the employing or contracting of lobbyists. Additionally, in my opinion, it is also doubtful that such a power could be said to be "necessarily implied" from the statutes. Finally, although the most recent appropriation act for the Department of Health (Act 33 of 2003
(1st Ex. Sess.), contains a healthy appropriation for "Prof. Fees" to support the Department's state operations (Act 33, § 3, Item (06)(C)), I cannot infer a necessarily implied power from this provision to acquire the services of a contract lobbyist.
I should reiterate, however, that I have found no controlling law on this point in Arkansas. The statutes of some states expressly address the issue. See e.g., Wash. Rev. Code Ann. §42.17.190(3). Legislative or judicial clarification may therefore be indicated. Pending such clarification, however, it is my opinion that such contracts are unauthorized.
Question 2 — Can funds received from the Department of Health beused for said lobbying purposes?
See response to Question 1 above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh