ROGER D. MESSER v. THE TOWN OF CHAPEL HILL, NORTH CAROLINA, A
MUNICIPAL CORPORATION; JOSEPH L. NASSIF, MAYOR OF THE TOWN OF CHAPEL
HILL; THE COUNCIL OF THE TOWN OF CHAPEL HILL AND ITS
MEMBERS; MARILYN BOULTON, JONATHAN HOWES, BEVERLY
KAWALEC, R. D. SMITH, BILL THORPE, JOSEPH STRALEY, JOSEPH A.
HERZENBERG, AND JAMES C. WALLACE

No. 8215SC103

(Filed 7 December 1982)

**1. Municipal Corporations § 30.3— validity of subdivision ordinance**

The municipal subdivision ordinance under which defendant failed to ac-
cept plaintiff's complete subdivision plan was valid, and defendant's actions in
rejecting plaintiff's plan were within the grant of authority of the ordinance.

**2. Municipal Corporations § 30.8— meaning of subdivision ordinance and statute**

Wording in both a municipal ordinance and G.S. 160A-372 that a recrea-
tion area will serve "residents of the immediate neighborhood within the sub-
division" means that the area is meant primarily to serve residents of the
immediate neighborhood.

**3. Eminent Domain § 2; Municipal Corporations § 29— conditioning approval of
subdivision plan—no taking requiring compensation**

Merely changing the location of the recreation area as a condition of ap-
proval of a subdivision plan does not amount to a taking so as to require com-
pensation.

APPEAL by plaintiff from *Battle, Judge.* Judgment entered on
30 September 1981 in Superior Court, ORANGE County. Heard in
the Court of Appeals 17 November 1982.

This case arose when the defendant did not accept a written
request by plaintiff for approval of a subdivision within the de-
fendant's planning jurisdiction. As the developer of a 29.2 acre,
40-lot area known as Laurel Hill Subdivision, Section IV, plaintiff
submitted the request on 1 December 1980 in accordance with
Chapel Hill subdivision ordinance § 18-51 which states:

Under the authority granted by Section 160A-372 of the
North Carolina General Statutes, every subdivision for
residential purposes shall include a portion of land per-
manently dedicated for the purpose of providing open space,
park or other recreational areas to serve residents of the im-
mediate neighborhood within the subdivision.

G.S. 160A-372 allows subdivision ordinances to provide "for the
dedication or reservation of recreation areas serving residents of

the immediate neighborhood within the subdivision. . . ." G.S. 160A-371 allows a city "by ordinance to regulate the subdivision of land within its territorial jurisdiction." There was no dispute that plaintiff's land is within defendant's territorial jurisdiction.

On 27 January 1981, the Planning Board heard a report from a member of its staff that stated that the Recreation Commission wanted the open space in the eastern part of the property while the plaintiff wanted it next to the arboretum in the northwestern section. The plaintiff objected to the proposed relocation and submitted a modified proposal that would place the open space in the western portion of the subdivision.

In a report dated 9 February, the Parks and Recreation Commission stated that the revised plan was an acceptable compromise, but its first preference was lots 17-20 in the northeastern part of the subdivision.

At its 17 February meeting, the Planning Board heard a report from the Planning Director, who concluded that the space proposed by plaintiff did not meet the intent of the city ordinance. He cited four reasons for that conclusion:

> 1) the proposed 2.02 acre open space parcel is long and narrow in shape, which reduces its potential for accommodating various recreational activities; and 2) the proposed open space cannot be enlarged by adding to it open space that is expected to be required for phase 2 of Laurel Hill IV; 3) the open space would not be centrally located within larger context of Laurel Hill IV, Phases 1 and 2; and 4) if the open space were to be dedicated to the Hunt Arboretum it would most likely not be available for development for active recreational uses.

Lots 17-20 were recommended for open space in this report.

The subdivision proposal was approved at the 23 February City Council meeting subject to thirteen conditions. Condition eleven stated:

> That the open space be relocated in the area identified as lots 17, 18, 19 and part of 20. That the open space be dedicated to the public use and be deeded to the Town subject to the acceptance by the developer and approval by the

Council after receiving the recommendation of the Recreation Commission. The applicant may revise the lot layout and alignment of Rhododendron Drive prior to the final plat if necessary to adjust for this change in open space location.

On 8 April, plaintiff filed a petition for a writ of certiorari in Orange County Superior Court alleging that this condition was contrary to the Chapel Hill subdivision ordinance. He alleged injury in that his proposal was more suitable to the use of residents in the subdivision than a park open generally to the public.

After a hearing before Judge Battle based solely on the administrative record, a judgment was filed on 30 September. The judgment affirmed the relocation of the recreation area as being within Chapel Hill's subdivision ordinance and the enabling legislation. But it found that Chapel Hill could not require that the open space be deeded to it. Instead, the judgment substituted the language "That the open space be dedicated to the public use."

From this judgment, plaintiff appealed.

*Lyman & Ash, by Cletus P. Lyman, and Moses & Murphy, by Donald L. Murphy, for plaintiff-appellant.*

*Haywood, Denny & Miller, by Michael W. Patrick, for defendant-appellees.*

ARNOLD, Judge.

Plaintiff first argues that the choice of a site for a recreational area by the defendant that he did not agree with is equivalent to a taking of private property for a public purpose without just compensation in violation of the United States and North Carolina Constitutions. We disagree with this contention because the statute and the city ordinance under which the actions in this case were taken are valid.

[1] A municipal ordinance is presumed to be valid with the burden on an attacking party to show its invalidity. 9 Strong's N.C. Index 3d *Municipal Corporations* § 8 (1977). Although it is true that municipal ordinances which restrict the rights of private property owners will be strictly construed, *Heaton v. City of Charlotte*, 277 N.C. 506, 178 S.E. 2d 352 (1971) (construing a zon-

ing ordinance), we find that defendant's actions were within the grant of authority of the Chapel Hill ordinance. Our holding accords with the majority of jurisdictions that have been faced with this question when interpreting similar statutes. *See* Annot., 43 A.L.R. 3d 863 (1972). We also find that defendant's ordinance was within a specific grant of authority by the General Assembly, as it must be to be upheld. *Upchurch v. Funeral Home*, 263 N.C. 560, 140 S.E. 2d 17 (1965).

[2] Plaintiff argues that the language in both the ordinance and the statute that the recreation area will serve "residents of the immediate neighborhood within the subdivision" means that this area can only be used by those residents. We do not believe this was the intent of the General Assembly.

Instead, a more reasonable interpretation is that these areas were meant primarily to serve residents of the immediate neighborhood. Use of defendant's proposed location would meet such a test since the residents of Laurel Hill IV would be the primary users of the park and thus would be served by it.

A careful reading of the statute also reveals that these recreational areas can be used by the public, in addition to the subdivision residents. G.S. 160A-372 allows city ordinances to provide for the "*dedication or reservation* of recreation areas. . . ." (Emphasis added.) This disjunctive phrase is important because dedication of private property contemplates public use. *Spooner's Creek Land Co. v. Styron*, 7 N.C. App. 25, 171 S.E. 2d 215 (1969).

With the increased population that will follow development of the subdivision comes a need for recreational space. As the court in *Aunt Hack Ridge Estates, Inc. v. Planning Comm'n*, 160 Conn. 109, 119, 273 A. 2d 880, 885 (1970), stated, "the need for open space for . . . people becomes a public one."

Other jurisdictions have upheld ordinances and statutes like the one in this case on the ground that a subdivision creates a need for a recreation area, and a municipality can act to fill that need. *See Patenaude v. Town of Meredith*, 118 N.H. 616, 392 A. 2d 582 (1978); *Krughoff v. City of Naperville*, 68 Ill. 2d 352, 369 N.E. 2d 892 (1977). We note that the statute and ordinance before us did not set an arbitrary percentage of the subdivision to be used for recreational purposes that other cases have struck down.

*See, e.g., Admiral Development Corp. v. City of Maitland,* 267 So. 2d 860 (Fla. Dist. Ct. App. 1972); *Ansuini, Inc. v. City of Cranston,* 107 R.I. 63, 264 A. 2d 910 (1970).

[3]   We do not believe that defendant's action amounts to eminent domain. That term is defined as "the power of the sovereign or some agency authorized by it to take private property for public use." *Va. Elec. & Power Co. v. King,* 259 N.C. 219, 220, 130 S.E. 2d 318, 320 (1963). Merely changing the location of a recreation area as a condition of approval of a subdivision plan does not amount to a taking so as to require compensation. This is especially true given the fact that approval by defendant of plaintiff's plan was a privilege and not a right.

In summary, we hold that defendant's selection of a location for a recreation area as a condition of approving plaintiff's subdivision plan was a valid exercise of its police power under G.S. 160A-372.

Affirmed.

Judges HILL and JOHNSON concur.