DEIDRE V. BATCH v. TOWN OF CHAPEL HILL

No. 8815SC340

(Filed 7 February 1989)

### 1. Municipal Corporations § 31.2— denial of subdivision application—forum for appeal

Plaintiff's complaint in an action arising from the denial of her subdivision application was properly before the superior court, which properly entertained the motion for summary judgment reviewed here. Denial of a subdivision application may be reviewed by certiorari, or an aggrieved plaintiff may bring an original complaint, or join causes of action as permitted by N.C.G.S. § 1A-1, Rule 18(a).

### 2. Municipal Corporations § 30.22— review of subdivision application denial— summary judgment—properly granted

The trial court correctly concluded in an action arising from the denial of plaintiff's application for a subdivision permit that there was no dispute of material fact and that plaintiff's plan complied with all applicable requirements of the town's development ordinance except that plaintiff failed to indicate an intent to dedicate a right of way for proposed parkways; plaintiff failed to indicate an intent to dedicate to the town an additional ten feet of right of way and to add twelve feet of pavement width as well as curb and gutter along the property's road frontage; and plaintiff failed to indicate an intent to extend water and sewer lines to the property.

### 3. Municipal Corporations § 30.8— review of denial of subdivision application— applicable legal principles

The legal principles applied in review of zoning applications are relevant to subdivision application denial cases because zoning ordinances and subdivision ordinances both limit private property rights.

### 4. Constitutional Law § 23.1— exactions—test for determining regulatory taking

Though North Carolina has not yet adopted a test which determines when an exaction would be the equivalent of a regulatory taking under the Fifth Amendment takings clause, statutory authority leads to the conclusion that the North Carolina legislature has indicated that the rational nexus test is the proper test to be adopted in North Carolina. The rational nexus test provides that a subdivider can be required to bear that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision.

### 5. Municipal Corporations § 30.10— denial of subdivision application—failure to accommodate proposed parkway—denial without statutory authority

In an action arising from the denial of plaintiff's subdivision application, the trial court's conclusion that the town's requirement that plaintiff dedicate a right of way or "accommodate" a subdivision plan to the proposed alignment of a parkway was unsupported by statutory authority was consistent with the subdivision enabling statute; the need for the proposed parkway arose not as a

Batch v. Town of Chapel Hill

result of plaintiff's subdivision plan, but because of preexisting traffic conges-
tion created by the general community. Additionally, plans for the parkway
are indefinite both as to financing and timing.

**6. Constitutional Law § 23.1— exactions—rational nexus test**

To determine whether an exaction amounts to an unconstitutional taking,
the court shall: (1) identify the condition imposed; (2) identify the regulation
which caused the condition to be imposed; and (3) determine whether the
regulation substantially advances a legitimate state interest. If the regulation
substantially advances a legitimate state interest, the courts shall then deter-
mine (4) whether the condition imposed advances that interest; *and* (5) whether
the condition imposed is proportionally related to the impact of the develop-
ment.

**7. Constitutional Law § 23.1— denial of subdivision application—requirement of
parkway dedication—unconstitutional taking**

In an action arising from the denial of plaintiff's subdivision application in
part because she failed to incorporate the alignment of a proposed parkway
right of way into the subdivision plan, the trial court correctly invalidated the
parkway condition by recognizing plaintiff's claim for inverse condemnation.
The town had no standing to impose the condition unless it could meet the ex-
action test, which it could not.

**8. Constitutional Law § 23.1— subdivision application denied—violation of due
process**

The denial of plaintiff's subdivision application on the basis of her refusal
to accommodate a proposed parkway deprived plaintiff of due process of law in
violation of Art. I, § 19 of the North Carolina Constitution and the Fourteenth
Amendment to the U.S. Constitution in that the imposition of the parkway
condition exceeded the statutory authority delegated to the town in N.C.G.S.
§ 160A-174. There was further evidence of substantive due process violations
in the vague and general reasons for the denial given by the town.

**9. Constitutional Law § 23.1— denial of subdivision application—requirement of
dedication for right of way—remanded**

In an action arising from the denial of plaintiff's subdivision application in
part because plaintiff failed to dedicate property for a minor arterial right of
way, the trial court's summary judgment for plaintiff was reversed in order
for the trial court to hear evidence and make findings on this issue in light of
this opinion.

**10. Municipal Corporations § 29— denial of subdivision application—requirement of
water and sewer line—invalid**

In an action arising from the denial of plaintiff's subdivision application,
the trial court correctly invalidated the town's requirement that plaintiff ex-
tend water and sewer lines to her property where plaintiff had received
preliminary approval from the Orange County Health Department for septic
tank systems on each of the proposed lots. The complete and integrated
statutory scheme regulating sanitary sewage systems set out in N.C.G.S.
§§ 130A-333 to 130A-337 delegates the power to approve septic tank systems
to the local board of health. N.C.G.S. § 160A-174.

Batch v. Town of Chapel Hill

**11. Constitutional Law § 23.1— denial of subdivision application—requirement of water and sewer lines—not an unconstitutional taking of entire tract**

In an action arising from the denial of plaintiff's subdivision application, plaintiff's argument on cross-appeal that the trial court erred in refusing to recognize that denial of a subdivision application on the basis of plaintiff's refusal to extend water and sewer lines to the property constituted an unconstitutional taking of the entire tract was rejected.

APPEAL by defendant from *Brannon, Judge*. Orders entered 31 December 1987 in Superior Court, ORANGE County. Heard in the Court of Appeals 25 October 1988.

On or about 16 September 1986, plaintiff applied to the Town of Chapel Hill for a permit to subdivide a twenty acre tract into eleven lots within the extraterritorial planning jurisdiction of the town.

After reviewing plaintiff's subdivision application, the town staff informed the plaintiff that the application was, in the planning staff's judgment, inconsistent with the Town's development ordinance in eight (8) specific respects. In response to the planning staff's review, plaintiff submitted revisions to her application correcting all but three of the deficiencies. Defendant's planning staff recommended denial of the revised subdivision application on the following three (3) bases:

> 1. Plaintiff failed to indicate on her subdivision plat an intent to dedicate to the Town of Chapel Hill a right-of-way through her property for the proposed Laurel Hill Parkway.

> 2. Plaintiff failed to indicate on her subdivision plat an intent to dedicate to the Town an additional ten (10) feet of right-of-way along Old Lystra Road and to improve Old Lystra Road by adding an additional twelve (12) feet of pavement width as well as curb and gutter along the property's approximately 973 feet of frontage on that road.

> 3. Plaintiff failed to indicate in her subdivision application an intent to extend public water and sewer lines to her property, such extension estimated to cost in excess of $750,000.00.

On 9 March 1987, the Chapel Hill Town Council unanimously adopted its staff's recommendation and denied the plaintiff's ap-

plication. The following reasons were given for denial of the application:

1. Is not consistent with the orderly growth and development of the Town as outlined in the Comprehensive Plan of the Town and, in particular the Land Use Plan, as required by Section 6.5.1 of the Development Ordinance.

2. Does not have streets which coordinate with existing and planned streets and highways as required by Sections 7.7.1 and 6.5.1 of the Development Ordinance.

3. Does not create conditions essential to the present and future public health, safety and general welfare as required by the Development Ordinance.

4. Does not provide for the construction of Community service facilities in accordance with the municipal policies and standards as set out in the Comprehensive Plan and as required by Section 7.7.1 of the Development Ordinance.

On 8 April 1987, plaintiff filed a Petition for Writ of Certiorari and a Complaint, seeking a declaration that the denial of her application was neither required by the town ordinance, authorized by statute nor constitutional. Plaintiff asserted claims including: (1) violation of due process; (2) taking of property; (3) denial of equal protection; (4) temporary taking; (5) violation of civil rights pursuant to 42 U.S.C. § 1983; (6) inverse condemnation pursuant to N.C.G.S. § 40A-51.

Plaintiff asked the court for an injunction to require approval of her application, damages for unconstitutional deprivation of property and denial of equal protection, and compensation for a temporary taking of her property, including costs and attorneys' fees.

The trial court ruled that the Writ of Certiorari and plaintiff's complaint were properly joined. Upon plaintiff's motion for summary judgment, the court heard argument, and reviewed the record of the proceedings before the Town, supplemented by affidavits. By its order dated 31 December 1987, the court found that the plaintiff had been deprived of her constitutional and civil rights, and that her property had been temporarily taken. The court ordered the Town to approve the applicant's subdivision

plat, reserved for trial the question of plaintiff's damages, and assessed the costs of the action including reasonable attorneys' fees against the defendant. The Town appealed.

*Michael B. Brough & Associates, by Michael B. Brough and Frayda S. Bluestein, for appellee.*

*Ralph D. Karpinos, Town Attorney for the Town of Chapel Hill; and Hunter & Wharton, by John V. Hunter III, for defendant appellant.*

ARNOLD, Judge.

Summary judgment granted by the trial court recognized plaintiff's claims for violation of due process, taking, temporary taking, town action which exceeded statutory authority, inverse condemnation, and damages under 42 U.S.C. §§ 1983, 1988. Issues for decision by this Court are whether the trial court properly entertained the motion for summary judgment and, if so, whether it determined correctly that there existed no genuine issue as to any material fact and that the plaintiff was entitled to judgment as a matter of law.

## Procedure

[1] As an initial matter it is necessary to resolve whether the trial court erred in allowing the plaintiff to proceed in one action with a petition for certiorari and a complaint. We find that it was an acceptable way to proceed under the North Carolina Rules of Civil Procedure.

Generally, North Carolina allows for liberal joinder of claims:

> A party asserting a claim for relief as an original claim, counterclaim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party.

N.C. Rules of Civ. Proc. 18(a). The rule has been interpreted as removing "all restrictions on the number or kinds of claims that may be joined by a party . . . it should no longer be possible to have a misjoinder of claims or causes of action as under the former practice." Shuford, *N.C. Civ. Prac. & Proc.* § 18-3 (3rd Ed. 1988).

Proper procedure in this case can be distinguished from zoning case denials because the statutory scheme governing zoning ordinances provides that when a municipality denies a special use or conditional use permit, "every such decision of the city council shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C.G.S. §§ 160A-381, 160A-388. *See Coastal Ready-Mix Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 265 S.E. 2d 379, *reh. denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980) (conditional use permit denied); *see Charlotte Yacht Club v. County of Mecklenburg*, 64 N.C. App. 477, 307 S.E. 2d 595 (1983) (denial of special use permit affirmed).

There is no similar statutory mandate for review of town decisions on subdivision applications. *See* N.C.G.S. §§ 160A-371-376. Further, the North Carolina Supreme Court in *Town of Nags Head v. Tillet*, 314 N.C. 627, 336 S.E. 2d 394 (1985), cautioned against relying on "the broad enforcement provisions of N.C.G.S. 160A-389, a zoning statute, as the statutory basis for denying a building permit to one whose lot violates . . . subdivision requirements." *Tillet* at 631, 336 S.E. 2d at 397. Similarly, it would be incorrect to limit review of subdivision application denials based on the procedure authorized for zoning application denials.

Though it is true that the Town of Chapel Hill Development Ordinance 7.6.1.11 allows for superior court review "in the nature of certiorari" within thirty days, this provision cannot limit plaintiff's right to bring a complaint against the Town. "Authority to establish rules governing the procedure and practice in superior courts is vested in the General Assembly unless such authority is delegated to the Supreme Court." N.C. Const. art. IV, § 13.(2). *See White Oak Properties v. Town of Carrboro*, 313 N.C. 306, 311, 327 S.E. 2d 882, 885 (1985).

When a Board of County Commissioners denied a homeowner association petition to prohibit a developer from using duplicative names in violation of the county subdivision ordinance, plaintiff association filed a complaint and petition to be treated in the alternative as a petition for judicial review or petition in the nature of a writ for certiorari, and sought an injunction or restraining order prohibiting use of the names. This Court found that the " 'judgment' of the board disregarded" a county ordinance and thus the decision of the Board of Commissioners was

reversed. *Springdale Estates Assoc. v. Wake County*, 47 N.C.
App. 462, 467, 267 S.E. 2d 415, 418 (1980). In analyzing the pro-
cedural posture of the case, the court adopted the procedure es-
tablished in zoning cases:

> Ordinarily, a municipal body, when sitting for the purpose of
> review, is vested with quasi-judicial powers, and a decision of
> the board, while subject to review by the courts upon cer-
> tiorari, will not be disturbed in the absence of arbitrary, op-
> pressive, or manifest abuse of authority, or disregard of the
> law. The findings of fact made by the commissioners, if sup-
> ported by evidence introduced at the hearing before the
> board, are conclusive. But when the findings of the board are
> not based on competent evidence, the proceedings must be
> remanded.

*Id., citing Refining Co. v. Board of Aldermen*, 284 N.C. 458, 469,
202 S.E. 2d 129 (1974); *Jarrell v. Board of Adjustment*, 258 N.C.
476, 480, 128 S.E. 2d 879 (1963).

We agree that a decision of a town board must be disturbed
if it is arbitrary, oppressive or manifests abuse of authority or
disregard of the law. We do not agree with any implicit sugges-
tion that review in subdivision cases can only be made upon cer-
tiorari as was the case in the zoning cases relied on by the
*Springdale* court. *De novo* review is appropriate when a claim
raises constitutional questions because "[t]he courts are the sole
and final arbiters of the constitutionality of local and state legisla-
tion, regulations, and other governmental action." Schnidman,
*Handling the Land Use Case* § 5.2 (1984 & Supp. p. 221). *See
Hylton Enterprises v. Board of Supervisors*, 220 Va. 435, 258 S.E.
2d 577 (1979). (When a subdivider contends that disapproval of a
plat was not properly based upon the applicable ordinances or
was arbitrary or capricious, he may appeal to an appropriate
court, which has authority to order approval of the plat.)

As stated in its order dated 4 September 1987, the Superior
Court determined that the plaintiff's claims were properly joined:

> . . . [I]t is hereby determined that the writ of certiorari has
> been joined for the ancillary purpose of bringing up to the
> Superior Court the records that were before Defendant's
> Town Council at the hearing of the Plaintiff/Petitioner's ap-

plication for subdivision approval. This action shall proceed according to the rules of evidence and procedure governing a civil action at law rather than the rules applicable to a proceeding in the nature of certiorari.

The North Carolina Supreme Court has recognized as proper a superior court's exercise of appellate and original jurisdiction in one cause of action. *Wilson Realty Co. v. City and County Planning Board for the City of Winston-Salem and Forsyth County*, 243 N.C. 648, 656, 92 S.E. 2d 82, 87 (1956). In *Wilson* the court recognized that the writ of certiorari may be used "as an ancillary writ in a *mandamus* action for the purpose of bringing up from the inferior tribunal . . . records deemed necessary for use in the trial of the case on its merits." *Id.* at 656, 92 S.E. 2d at 87. *Mandamus* is an exercise of original, not appellate, jurisdiction. *Id. See* 35 N.C. L. Rev. 180-81 (1957).

Here the use of certiorari as ancillary to plaintiff's complaint is consistent with the definition of certiorari "to bring into superior court the record of the administrative or inferior judicial tribunal for inspection." Black's Law Dictionary (1968) (citations omitted). For reasons enunciated herein, we recognize that denial of subdivision applications may be reviewed by certiorari, or an aggrieved plaintiff may bring an original complaint, or join causes of action as permitted by N.C. Rule of Civ. Proc. 18(a). Therefore, plaintiff's complaint was properly before the superior court, which properly entertained the motion for summary judgment which we are asked to review here.

### Summary Judgment

[2] Having determined that summary judgment was properly before the trial court, we must determine whether there is any genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law. *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972). Upon motion for summary judgment a court may consider affidavits, depositions, answers to interrogatories, admissions on file "and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Kessing v. National Mortgage Corporation*, 278 N.C. 523, 180 S.E. 2d 823 (1971). *See* Shuford, *N.C. Civ. Prac. & Proc.* § 56-8 (3rd Ed. 1988).

The trial court found no genuine dispute as to these material facts:

On 28 October 1986 plaintiff submitted to the defendant an application for approval of a preliminary plat to create a small subdivision consisting of 11 lots, one of which she intended to use as her personal residence. On 9 March 1987, the Chapel Hill Town Council adopted its staff's recommendation and denied plaintiff's application for the following three reasons:

(1) Plaintiff failed to indicate on her subdivision [plat] an intent to dedicate to the Town of Chapel Hill a right-of-way [through her property] for the proposed Laurel Hill Parkway. (hereinafter "Parkway Condition")

(2) Plaintiff failed to indicate on her subdivision plat an intent to dedicate to the town an additional ten (10) feet of right-of-way along Old Lystra Road and to improve Old Lystra Road by adding an additional twelve (12) feet of pavement width as well as curb and gutter along the property's approximately 973 feet [of] frontage on that road. (hereinafter "Lystra Rd. Condition")

(3) Plaintiff failed to indicate in her subdivision application an intent to extend public water and sewer lines to her property, such extension estimated to cost in excess of $750,000.00. (hereinafter "Water and Sewer Condition")

Moreover, the court further concluded that there was no dispute of a material fact, and that, except as set forth above, plaintiff's subdivision application complied with all applicable requirements of the Town of Chapel Hill's development ordinance. Additional facts that the court concluded were undisputed will be discussed below in relevant sections of this opinion.

Defendant contends that there may have been other reasons that the subdivision application was denied. We disagree. Careful review of the affidavits in support of summary judgment, the record of the Town Council meeting of 9 March 1987, other documents properly before the court, and the transcript of the summary judgment hearing, support the Superior Court's conclusions as to why the application was denied. Defendant came forward with no evidence that the denial was for any other reason.

We affirm the portion of the trial court's order which identifies the reasons for denial of the subdivision application.

The trial court set out three conclusions of law in its summary judgment order. The first is set out below:

> Defendant's denial of Plaintiff's subdivision on the basis of Plaintiff's failure to dedicate right of way necessary to accommodate the proposed Laurel Hill Parkway is unsupported by any statutory authority, deprives Plaintiff of her property without due process of law, in violation of Article I, Section 19 of the North Carolina Constitution and the 14th Amendment to the United States Constitution and 42 U.S.C. Section 1983, constitutes a temporary taking of that portion of the Plaintiff's property shown within the proposed right of way alignment of the Laurel Hill Parkway in violation of Article 1, Section 19 of the North Carolina Constitution, and, unless compensation is paid pursuant to G.S. Chapter 40A, the town's denial is in violation of the 5th and 14th Amendments to the United States Constitution.

The second conclusion of law found that "[t]he denial of Plaintiff's subdivision application on the basis of Plaintiff's refusal to dedicate the right of way for and make improvements to Old Lystra Rd." was unlawful for the same reasons that a Parkway dedication would be unlawful.

The third conclusion of law determined that the application denial could not be based on plaintiff's refusal to extend public water and sewer lines because defendant "has no statutory authority to deny the use of individual well and septic tank systems that are approved by the Orange County Health Department pursuant to State regulations."

Defendant assigns error to all three conclusions of law.

## Parkway Condition

### 1. Common Law

[3] Despite the fact that the zoning statutes do not limit how a subdivision applicant may seek judicial review, the legal principles applied in review of zoning applications are relevant to subdivision application denial cases because zoning ordinances and

subdivision ordinances both limit private property rights. *Application of Rea,* 272 N.C. 715, 718, 158 S.E. 2d 887, 890 (1968). One commentator states:

> Second only to zoning in importance in the land use regulatory picture is subdivision regulation. The official zoning map, along with the text of the zoning ordinance control *what* may be developed on a specific parcel of land; but the subdivision regulations direct *how* such development will occur. Subdivision regulation is the means by which the municipality ensures that the infrastructure necessary for proper functioning of the community . . . is planned and implemented.

Schnidman, *Handling the Land Use Case* § 1.4, pp. 21-22 (1984 & Supp. 1988).

When a town council reviews a subdivision application the council sits in a quasi-judicial capacity. *Springdale Estates.* Similarly, " 'when a board of aldermen, a city council, or zoning board hears evidence to determine the existence of facts and conditions upon which the [zoning] ordinance expressly authorizes it to issue a special use permit, it acts in a quasi-judicial capacity.' " *Humble Oil and Refining Co. v. Board of Aldermen,* 286 N.C. 170, 209 S.E. 2d 447, 449 (1974), *citing Humble Oil & Refining Co. v. Bd. of Aldermen,* 284 N.C. 458, 202 S.E. 2d 129 (1974). In the zoning review context the North Carolina Supreme Court enunciated the "two-step decision-making process" a town board had to follow in granting or denying an application for a special use permit:

> (1) When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, prima facie he is entitled to it.

> (2) A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Coastal Ready-Mix Concrete Co. v. Board of Commissioners,* 299 N.C. 620, 625, 265 S.E. 2d 379, 382, *reh'g denied,* 300 N.C. 562, 270 S.E. 2d 106 (1980) (conditional use permit denied) (citations omitted). Because of the similar issues involved in subdivision applica-

tions and zoning variance applications, the rules enunciated above logically extend to govern a subdivision application proceeding.

However, we agree with the defendant that if the denial of the application by the town council was valid for any of the three reasons previously listed, the denial of the subdivision application may stand. *Jennewein v. City of Wilmington*, 62 N.C. App. 89, 93, 302 S.E. 2d 7, 9, *rev. denied*, 309 N.C. 461, 307 S.E. 2d 365 (1983). Of course, a valid reason, by definition, must be "supported by competent, material and substantial evidence." *Jennewein* at 93, 302 S.E. 2d at 9.

## 2. Fifth Amendment

**[4]** Plaintiff urges this Court to recognize that the conditions imposed by the town were unlawful exactions of defendant's property and to apply the Fifth Amendment regulatory taking doctrine enunciated in *Nollan v. California Coastal Comm'n*, --- U.S. ---, 97 L.Ed. 2d 677, 107 S.Ct. 3141 (1987). In that case the United States Supreme Court held that the California Coastal Commission could not refuse its grant of permission to rebuild a beach house because the applicants refused to comply with a condition that they transfer to the public an easement across their beachfront property:

> [Though] [t]he access required as a condition of the permit is part of a comprehensive program to provide continuous public access . . . .
>
> [T]hat does not establish that the Nollans . . . alone can be compelled to contribute to its realization. Rather, California is free to advance its "comprehensive program," if it wishes, by using its power of eminent domain for this "public purpose," *see* U.S. Const. Amdmt V; but if it wants an easement across the Nollans' property, it must pay for it.

--- U.S. ---, 97 L.Ed. 2d at 692, 107 S.Ct. at 3150.

*Nollan* established that a heightened scrutiny "remoteness test" is to be used if a regulation is alleged to violate the takings clause of the Fifth Amendment: the regulation must "substantially advance" a "legitimate state interest." *Id.* at ---, 97 L.Ed. 2d at 687, 107 S.Ct. at 3146, *citing Agins v. Tiburon*, 447 U.S. 255, 260, 65 L.Ed. 2d 106, 100 S.Ct. 2138 (1980). When a takings claim

is made under the due process clause of the Fourteenth Amendment, a less strict, "rational basis" analysis is used. *See* R. Freilich, Finetuning the Taking Equation: Applying It to Development Exactions, 40 Land Use Law & Zoning Digest (March 1988). North Carolina has established a test of "reasonableness" to judge a due process challenge to governmental regulation of private property. *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444 (1979). Plaintiff's substantive due process claim is addressed in another section of this opinion.

Defendant cites many cases for the proposition that "subdivision plans can be denied for failure to comply with a master plan." *Board of County Commissioners v. Gaster*, 285 Md. 233, 401 A. 2d 666 (1979). However, this rule cannot be isolated from constitutional issues presented in a case. Defendant asserts that this Court should not decide the case on constitutional grounds when it may be decided on other grounds. This maxim is wrongly applied to cases involving municipal ordinances. *State v. Scoggin*, 236 N.C. 1, 6, 72 S.E. 2d 97, 101 (1952) (strictly speaking rule only applies to Legislative Acts).

Like *Nollan* the "Parkway Condition" is an exaction with Fifth Amendment implications:

[A]n exaction is a condition of development permission that requires a public facility or improvement to be provided at the developer's expense. Most exactions fall into one of four categories: (1) requirements that land be dedicated for street rights-of-way, parks, or utility easements and the like; (2) requirements that improvements be constructed or installed on land so dedicated; (3) requirements that fees be paid in lieu of compliance with dedication or improvement provisions; and (4) requirements that developers pay "impact" or "facility" fees reflecting their respective prorated shares of the cost of providing new roads, utility systems, parks, and similar facilities serving the entire area.

Ducker, *"Taking" Found for Beach Access Dedication Requirement* 30 Local Gov't Law Bulletin 2, Institute of Government (1987).

Defendant's argument that this case does not raise constitutional issues fails. Specifically focusing on the condition that plain-

tiff set aside a right-of-way for Laurel Hill Parkway the defendant argues that it did not necessarily require a dedication of land, but mere accommodation or coordination of a right-of-way with the town's thoroughfare plan. The *Nollan* court categorically refutes defendant's position that a requirement that the plaintiff set aside a right-of-way would not present a constitutional takings issue:

> To say that the appropriation of a public easement across a landowner's premises does not constitute the taking of a property interest but rather, (as Justice Brennan contends) "a mere restriction on its use," post at ---, n3, 97 L.Ed. 2d 696-97, is to use words in a manner that deprives them of all their ordinary meaning. Indeed, one of the principal uses of the eminent domain power is to assure that the government be able to require conveyance of just such interests, so long as it pays for them.

*Nollan* at ---, 97 L.Ed. at 685, 107 S.Ct. at 3145.

It is important to realize that unlike other takings cases, when an exaction amounts to a physical occupation of property the analysis focuses on whether the specific property right which would be relinquished to fulfill the condition amounts to a taking, regardless of whether the condition imposed " 'has only a minimal economic impact on the owner.' " *Id., citing Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433, 73 L.Ed. 2d 868, 102 S.Ct. 3164 (1982). In *Nollan* the question was whether the building permit condition imposed, dedication of an easement so the public could walk across the beachfront portion of plaintiff's property, amounted to a taking regardless of whether the condition detracted fron the economic value of plaintiff's lot. *Id.*

Not all exactions are constitutional takings. Though other state courts have enunciated a preference for one of three distinct tests to answer the question whether an exaction constitutes an unconstitutional taking, the question is one of first impression in North Carolina. *Ducker* at 2. A complete discussion of these tests can be found in Rathkopf, *The Law of Zoning and Planning* § 65.03 at 65-98 n.21 (1987). "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens, which, in all fairness and justice, should be borne by the public as a whole.' " *Nollan*, --- U.S. ---,

97 L.Ed. 2d at 688, 107 S.Ct. 3147, n.4 (citing *Armstrong v. United States*, 364 U.S. 40, 49, 4 L.Ed. 2d 1554, 80 S.Ct. 1573 (1960). An exaction test identifies when an individual property owner should pay for a community improvement and when that cost more fairly lies with the "public as a whole."

In *Nollan*, the Court did not favor a single test to identify when an exaction amounts to a taking under the just compensation clause. In that case the defendant, California Coastal Commission, proposed a "reasonably related" test. Justice Scalia stated for the Court:

> We can accept, for purposes of discussion, the Commission's proposed test as to how close a "fit" between the condition and the burden is required, because we find that this case does not meet even the most untailored standards.

*Id.* at ---, 97 L.Ed. 2d at 690, 107 S.Ct. at 3148. In *Nollan* the condition was struck because the court found that the condition did not substantially advance the legitimate government interest. *Id.* An exaction test is used to evaluate a taking only after it has been shown that the exaction "substantially advances a legitimate government interest." *Id.* The court implicitly recognized as valid all three exaction tests, but singled out the California "reasonably related test" as unique to that state. *Id.* at ---, 97 L.Ed. 2d at 690-91, 107 S.Ct. at 3149.

The narrowest exaction test requires that the benefit accruing from the exaction be "specifically and uniquely attributable" to the development. That is, the development creates an impact which causes the need for the exaction, and the benefit flowing from the exaction must inure "almost exclusively" to development residents. *Ducker* at 2. *Pioneer Trust & Saving Bank v. Mount Prospect*, 22 Ill. 2d 375, 176 N.E. 2d 799 (1961); *see Nollan* at ---, 97 L.Ed. 2d at 690, 107 S.Ct. at 3149.

The second and least demanding test is the "reasonably related" test which finds no exaction when the "proposed development is a contributing factor to the problem sought to be alleviated." *Holmes v. Planning Board of Town of New Castle*, 78 A.D. 2d 1, 433 N.Y.S. 2d 587 (1980); *see Ayres v. City Council of Los Angeles*, 34 Cal. 2d 31, 207 P. 2d 1 (1949). This test is justified by a municipality's police power to assure the general welfare. *Id.*

Last, the "rational-nexus" test provides that a subdivider can be required "to bear that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision." *Longridge Bldrs. v. Planning Bd. of Twp. of Princeton*, 52 N.J. 348, 245 A. 2d 336, 337 (1968); *see Jordan v. Menomonee Falls*, 28 Wis. 2d 608, 137 N.W. 2d 442 (1966). *Cupp v. Board of Supervisors*, 227 Va. 580, 318 S.E. 2d 407 (Va. 1984). Though North Carolina has not yet adopted a test which determines when an exaction would be the equivalent of a regulatory taking, statutory authority leads us to conclude that the North Carolina legislature has indicated that the "rational-nexus test" is the proper test to be adopted in North Carolina.

## Statutory Provisions

The North Carolina legislature has delegated to municipalities the power to enact subdivision ordinances. N.C.G.S. § 160A-174. The introductory language of the subdivision enabling statute, N.C.G.S. § 160A-372 states:

A subdivision control ordinance may provide for the orderly growth and development of the city; for the coordination of streets and highways within proposed subdivisions with existing or planned streets and highways and with other public facilities; for the dedication or reservation of recreation areas *serving residents of the immediate neighborhood within the subdivision or*, alternatively, for provision of funds to be used to acquire recreation areas *serving residents of the development or subdivision or more than one subdivision or development within the immediate area*, and rights-of-way or easements for street and utility purposes including the dedication of rights-of-way . . . . (Emphasis added.)

The emphasized language indicates that the legislature contemplated that any dedication or reservation for recreation areas would directly benefit the subdivision from which the reservation or dedication would be exacted. The statute allows that funds to acquire recreation areas may serve the residents of the subdivision or "more than one subdivision or development *within the immediate area.*" However, the statute further states that:

Any formula enacted to determine the amount of funds that are to be provided [by the developer to the city to acquire

recreational areas] . . . shall be based on the value of the development or subdivision for property tax purposes.

*Id.* This fund formula proviso comports with rational-nexus theory which provides that: "[t]he cost burden to the developer generally cannot exceed the prorated portion of the costs of providing facilities that can fairly be attributed to the development." *Ducker* at 2.

Concerning exactions for road construction N.C.G.S. § 160A-372 states:

The ordinance may provide that in lieu of required street construction, a developer may be required to provide funds that the city may use for the construction of roads to serve the occupants, residents, or invitees of the subdivision or development and these funds may be used for roads which serve more than one subdivision or development within the area. . . . Any formula adopted to determine the amount of funds the developer is to pay in lieu of required street construction shall be based on the trips generated from the subdivision or development.

Here the statute clearly ties any exaction for street development to the traffic generated by the subdivision.

However, N.C.G.S. § 160A-372 provides very different instructions when a reservation of a school site shall be required. In that case:

The ordinance may provide for the reservation of school sites in accordance with comprehensive land use plans approved by the council or the planning agency. . . . Whenever a subdivision is submitted for approval which includes part or all of a school site to be reserved under the plan, the council or planning agency shall immediately notify the board of education and the board shall promptly decide whether it still wishes the site to be reserved. If the board of education does not wish to reserve the site, it shall so notify the council or planning agency and no site shall be reserved. If the board does wish to reserve the site, the subdivision shall not be approved without such reservation. The board of education shall then have 18 months beginning on the date of final approval of the subdivision within which to acquire the site by

purchase or by initiating condemnation proceedings. If the board of education has not purchased or begun proceedings to condemn the site within 18 months, the subdivider may treat the land as freed of the reservation.

Thus, when a reservation is required for a school, a project which is for the good of the general community, the statute contemplates that a municipality shall exercise its power of eminent domain in a timely fashion. *See* N.C.G.S. § 40A-3.

[5] The portion of the trial court's first conclusion of law which found that the condition that plaintiff dedicate a right-of-way or "accommodate" her subdivision plan to the proposed alignment of the Laurel Hill Parkway was unsupported by statutory authority is consistent with our analysis of the subdivision enabling statute. The need for the proposed parkway arises not as a result of the plaintiff's subdivision plan, but because of pre-existing traffic congestion on Highway 15-501 created by the general community, not plaintiff's proposed subdivision. In addition, plans for the parkway are indefinite both as to financing and timing.

Reading the subdivision enabling statute N.C.G.S. § 160A-372 in its entirety it is clear that the introductory language allowing "for the coordination of streets and highways within proposed subdivisions with existing or planned streets and highways . . ." is modified by the formula provision: "[a]ny formula . . . shall be based on the trips generated from the subdivision or development." The forecast of the evidence showed that no car trips from the subdivision were likely to be made on the parkway since the proposed road likely would be limited access. In addition, the impact on 15-501 traffic was expected to be minimal. The Chapel Hill Planning Staff report dated 6 January 1987 states:

> *Traffic Analysis.* The proposed Old Lystra subdivision will generate approximately 110 trips per day. This project will have the most impact on the intersection of Old Lystra and Mt. Carmel Church Roads. During the am peak, which is the most critical at this intersection, vehicles turning onto Mt. Carmel Church Road experience a level C of service. *The addition of traffic from this project will not significantly lower the existing level of service.* (Emphasis added.)

The town's own report makes no connection between the need for Laurel Hill Parkway and the plaintiff's subdivision. Therefore, we agree that N.C.G.S. § 160A-372 does not authorize the town of Chapel Hill to impose a condition that the plaintiff dedicate a right-of-way to accommodate the proposed alignment of the Laurel Hill Parkway.

Defendant relies on dicta in *Messer v. Town of Chapel Hill*, 59 N.C. App. 692, 297 S.E. 2d 632 (1982), *rev. den.*, 307 N.C. 697, 301 S.E. 2d 390 (1983), for the proposition that the subdivision of property is "a privilege and not a right." *Id.* at 696, 297 S.E. 2d at 634. Any such notion was refuted in *Nollan*: " 'The right to build on one's own property . . . cannot remotely be described as a "governmental benefit" and the payment of a fee, dedication of land, etc. does not constitute a constitutionally valid "exchange" for a permit to build.' " L. Bozung, "The 1987 Land Use Trilogy: Keystone, First English and Nollan" presented August 1988, ABA annual meeting. *Citing Nollan* at --, 97 L.Ed. 2d at 687, 107 S.Ct. at 3146, n.2. In *Messer* the contested condition required relocation of a recreation area for the use of the immediate subdivision neighborhood. Unlike this case, the *Messer* court found that the town's condition for approval of a subdivision plat was within the grant of authority of N.C.G.S. § 160A-371.

In August of 1987, after plaintiff filed her subdivision application, the legislature enacted the Roadway Corridor Official Map Act (hereinafter Map Act), comprehensive legislation addressing how and when a comprehensive planning map for roads may affect a subdivision developer. Though the Map Act does not specifically affect plaintiff's application, we are guided by its policies in our determination of how to test when an exaction is a taking. The Map Act at N.C.G.S. § 136-44.50 states:

> (a) A roadway corridor official map may be adopted or amended by the governing board of any city within its corporate limits and the extraterritorial jurisdiction of its building permit issuance and subdivision control ordinances or by the Board of Transportation.
>
> * * * *
>
> (c) No roadway corridor or any portion thereof placed on an official map shall be effective unless:

(1) The roadway corridor or a portion thereof appears on the Transportation Improvement Program adopted by the Board of Transportation under G.S. 143B-350(f)(4); or

(2) The roadway corridor or a portion thereof appears on the street system plan adopted pursuant to G.S. 136-66.2, and the adopting city or town has adopted a capital improvements plan of 10 years or shorter duration which shows the *estimated cost of acquisition and construction of the designated roadway corridor and the anticipated financing for that project.* [Emphasis added.]

The Transportation Improvement Program provides for a comprehensive schedule of funded improvements within seven years. N.C.G.S. § 143B-350(f)(4). At N.C.G.S. § 136-44.51(b) the Map Act states that

(b) No application for building permit issuance or subdivision plat approval shall be delayed by the provisions of this section for more than three years from the date of its original submittal.

This last provision was added to assure that an applicant's property rights would not be affected by an indefinite thoroughfare plan.

## Exaction

Reading the subdivision enabling statute as a whole, particularly in conjunction with the policies set out in the Official Map Act and the Eminent Domain statutes, it is clear the legislature contemplated that exactions can only be imposed without compensation when the exaction condition meets a need created by the development and that as a result of the exaction there will be a commensurate benefit to the subdivision. However, when a school or road planning scheme for the general community requires an exaction the legislature has contemplated that cities and towns shall exercise their power of eminent domain in a timely and lawful fashion.

[6] Thus, the following rational nexus test is adopted to guide the trial court in evaluating when an exaction is tantamount to a taking under the just compensation clause. The test is based on

the principles enunciated in *Nollan*, the rationale of the North Carolina subdivision enabling statute, and the policy underlying the Map Act. To determine whether an exaction amounts to an unconstitutional taking, the court shall: (1) identify the condition imposed; (2) identify the regulation which caused the condition to be imposed; (3) determine whether the regulation substantially advances a legitimate state interest. If the regulation substantially advances a legitimate state interest, the court shall then determine (4) whether the condition imposed advances that interest; *and* (5) whether the condition imposed is proportionally related to the impact of the development.

This last condition when applied to large planned unit developments has been restated to ask whether "the economies of scale attributable to the magnitude of the development provide the basis for the municipality to require the developer to dedicate land needed for major public improvements or even to build certain improvements." *Schnidman* § 1.4.2 at 24.

[7] In addition to invalidation because of lack of statutory authority the trial court invalidated the Laurel Hill Parkway condition by recognizing the plaintiff's claim for inverse condemnation, stating that unless compensation is paid as required by the eminent domain statutes a taking will occur.

In its 6 January 1987 report to the Chapel Hill Planning Board the Chapel Hill Planning Department recommended a denial of plaintiff's subdivision application because "the applicant does not incorporate the alignment of the Laurel Hill Parkway right-of-way into the proposed preliminary plan." This memorandum exposes an elemental misconception of the meaning of right-of-way. A right-of-way is "a mere easement in the lands of others obtained by *lawful condemnation to public use or purchase.*" Black's Law Dictionary (1968) (emphasis added).

As there had been no lawful condemnation or purchase, there was no right-of-way, and therefore no legal standing to impose the condition unless the condition could meet the exaction test outlined above. First, the condition identified is that plaintiff dedicate, accommodate or reserve a right-of-way to coordinate her plan with the Town of Chapel Hill Thoroughfare Plan and Map, specifically the alignment of the Laurel Hill Parkway.

Second, the regulations relied on by the Chapel Hill Town Council to impose the condition are found at § 6.5.1 and § 7.7.1 of the Chapel Hill Development Ordinance:

The type and arrangement of streets and driveways within the development shall be in compliance with and coordinate to Chapel Hill's Transportation Plan. § 6.5.1.

The subdivision should be designed with a street network which provides safe, adequate access to all lots within the subdivision, and to properties adjoining the subdivision where such access is deemed desirable for the orderly future development of these properties. However, the design of the street network in a subdivision should not encourage through traffic (the origins and destination of which are external to the subdivision) to use local roads in a subdivision. Further, the various streets, utilities, recreation areas and other community facilities serving a subdivision should be sized and located in conformity with the Comprehensive Plan. § 7.7.1.

The test then asks whether the regulation substantially advances a legitimate state interest. *Nollan.* Like the *Nollan* court we accept for argument's sake that a condition of subdivision approval that a dedication of a right-of-way to preserve the alignment of the proposed parkway substantially advances the legitimate government purpose of placing streets in conformity with the Comprehensive Plan. *See id.* at ---, 97 L.Ed. 2d at 688, 107 S.Ct. at 3147.

It is the last step of the test which the Laurel Hill Parkway condition fails to meet because though the condition meets the fourth requirement in that it seems to substantially advance the preservation of the proposed parkway plan, the condition is not proportionally related to the impact of the development, and there is no commensurate benefit to the subdivision for its forfeit of land to preserve the Parkway Plan. Thus, to impose the exaction under these circumstances would deprive the plaintiff of the "economically viable use of her land." *Id.* at ---, 97 L.Ed. 2d at 687, 107 S.Ct. at 3146, and in this instance, an imposition of the condition amounts to a taking.

## Due Process

[8] The trial court also found that the denial of the plaintiff's subdivision on the basis of her refusal to comply with the Parkway condition deprived the plaintiff of "due process of law in violation of Article I, Section 19 of the North Carolina Constitution, the Law of the Land clause, and the 14th Amendment to the United States Constitution and 42 U.S.C. Section 1983 . . . ."

"The terms 'law of the land' and 'due process of law' are synonymous." *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 213, 258 S.E. 2d 444, 448 (1979). *But see Henry v. Edmisten*, 315 N.C. 474, 480, 340 S.E. 2d 720, 725 (1986). In *A-S-P Associates* a developer alleged that a zoning ordinance creating an historic district was constitutionally invalid. In that case the North Carolina Supreme Court set out several principles to guide an evaluation of a due process challenge to governmental regulation of private property on grounds that it is an invalid exercise of the police power:

> First, is the object of the legislation within the scope of the police power? Second, considering all the surrounding circumstances and particular facts of the case is the means by which the governmental entity has chosen to regulate reasonable? [Citations omitted.] This second inquiry is two-pronged: (1) Is the statute in its application reasonably necessary to promote the accomplishment of a public good and (2) is the interference with the owner's right to use his property as he deems appropriate reasonable in degree?

*Id.* at 214, 258 S.E. 2d at 448-9.

Police power can be lawfully exercised to protect the public safety, health, and general welfare. N.C.G.S. § 160A-174. "The police power may be delegated by the State to its municipalities whenever deemed necessary by the Legislature." *A-S-P Associates* at 213-14, 258 S.E. 2d at 448 [citations omitted]. In an earlier portion of this opinion we held that the imposition of the Parkway condition exceeded the statutory authority delegated to the Town of Chapel Hill in 160A-174. Though the Chapel Hill Development Ordinance at § 6.5.1. and § 7.7.1 appears facially lawful, to interpret it as authorizing the parkway condition in this case would put it beyond the scope of the delegated police power.

Further evidence of substantive due process violations in this case are found in the vague and general reasons for denial given by the town:

1. Is not consistent with the orderly growth and development of the Town as outlined in the Comprehensive Plan of the Town and, in particular the Land Use Plan, as required by Section 6.5.1 of the Development Ordinance.

2. Does not have streets which coordinate with existing and planned streets and highways as required by Sections 7.7.1 and 6.5.1 of the Development Ordinance.

3. Does not create conditions essential to the present and future public health, safety and general welfare as required by the Development Ordinance.

4. Does not provide for the construction of Community service facilities in accordance with municipal policies and standards as set out in the Comprehensive Plan and as required by Section 7.7.1 of the Development Ordinance.

"Substantive due process involves the clarity, specificity, and reasonableness of the organic laws, ordinances, and other restrictions on the use of private property." *Schnidman* § 3.1.3 at 101-02. When permit applicants challenged denial of a special exception under zoning ordinance the North Carolina Supreme Court stated:

[T]he commissioners cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, a mobile-home park would 'adversely affect the public interest.' The commissioners must also proceed under standards, rules and regulations, uniformly applicable to all who apply for permits.

*Application of Ellis*, 277 N.C. 419, 425, 178 S.E. 2d 77, 81 (1970); *see Woodhouse v. Board of Commissioners of Nags Head*, 299 N.C. 211, 261 S.E. 2d 882 (1980) (denial of application for a special use permit reversed).

The Chapel Hill Town Council made no findings of fact when it denied plaintiff's subdivision application. The reasons given for denial were vague and imprecise, though the record clearly indicates the three reasons for denial of the application. In fact,

§ 7.7.1, which is relied on by the town in its denial calls for a street network within subdivisions which does not encourage through traffic. It is inconsistent to rely on such a provision to fault an applicant for refusing to accommodate a major thoroughfare which would carry external traffic. For the foregoing reasons we affirm that portion of the trial court's order which found that the imposition of the parkway condition violated the plaintiff's due process rights.

## Lystra Road

[9] In its second conclusion of law the trial court found that the Lystra Road condition was unsupported by state statute, violated due process, and constituted a temporary taking for which compensation is due. This condition requires the plaintiff to dedicate, according to town requirements, a total of 9,735 square feet of her property for a minor arterial right-of-way. We reverse this portion of the court's summary judgment order to allow the lower court to hear evidence and make findings in light of our discussion of due process, *Nollan*, and the rational nexus test set forth above.

## Water and Sewer Condition

In its third conclusion of law the trial court found:

The denial of Plaintiff's subdivision application on the basis of Plaintiff's refusal to extend public water and sewer lines to her property is unsupported by Defendant's ordinance and is *ultra vires* since Defendant has no statutory authority to deny the use of individual well and septic tank systems that are approved by the Orange County Health Department pursuant to State regulations.

[10] North Carolina adheres to Dillon's Rule, that a local government possesses and can exercise only the following powers and no others: those granted in express words, those necessarily or fairly implied, and those essential to the objects and purposes of the municipal corporation. Any fair, reasonable doubt as to the existence of power is resolved by the courts against the municipality. *Greene v. City of Winston-Salem*, 287 N.C. 66, 213 S.E. 2d 231 (1975). The *Greene* court invalidated a municipal ordinance that required sprinkler systems in high-rise buildings. In that case the State Building Code statute required that any local building regu-

lations be approved by the state's Building Code council or be void. *Id.* at 71, 213 S.E. 2d at 237.

N.C.G.S. § 160A-174 was relied on by the *Greene* court to invalidate the sprinkler ordinance:

General ordinance-making power.

(a) A city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances.

(b) A city ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when:

* * * *

(5) The ordinance purports to regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation.

Regulation of sanitary sewage systems is set out at N.C.G.S. §§ 130A-333 to 130A-337. The complete and integrated statutory scheme delegates the power to approve septic tank systems to the local board of health. N.C.G.S. § 130A-335(c). In this case the trial court concluded that the plaintiff had received preliminary approval from the Orange County Health Department for septic tank systems on each of the 11 proposed lots. Given the statutory scheme mandated by the legislature, we affirm the portion of the lower court's order invalidating the water and sewer condition.

[11] Finally, we reject plaintiff's argument on cross appeal that the trial court erred in refusing to recognize that denial of the subdivision application on the basis of plaintiff's refusal to extend public water and sewer lines to the property constitutes an unconstitutional taking of plaintiff's entire tract.

For the reasons stated above that portion of the trial court's Conclusions of Law numbered (1): "Parkway Condition" and numbered (3): "Water and sewer condition" are affirmed. We remand for trial evaluation of the "Lystra Rd. condition" in light of our

discussion of *Nollan*, exactions, and due process. Only if the plaintiff prevails at trial in proving the invalidity of the "Lystra Rd." condition will it be appropriate to consider plaintiff's remedies.

For the reasons stated above the order of the trial court is affirmed in part, reversed in part and remanded.

Affirmed in part, reversed in part and remanded.

Judges WELLS and JOHNSON concur.